THE LARABEE FLOUR MILLS COMPANY, *Plaintiff*, v. THE MISSOURI PACIFIC RAILWAY COMPANY, *Defendant*.

No. 15,167.

### SYLLABUS BY THE COURT.

DAMAGES—*Jurisdiction—Refusal to Transfer Cars—Mandamus —Supersedeas Bond—Measure of Damages—Loss of Profits— Attorneys' Fees—Antitrust Law as a Defense*. In original proceedings in mandamus to compel a railway company to furnish transfer services to a shipper judgment was given for the plaintiff and the peremptory writ allowed. Thereupon the defendant sued out a writ of error to the supreme court of the United States, where the judgment was affirmed. The plaintiff then filed in this court a cla'm for damages. *Held,*

(1) The judiciary act (4 Fed. Stat. Anno., pp. 195-734) was not intended to affect and does not affect the jurisdiction of this court.

(2) The jurisdiction of this court in mandamus attaches upon the issuance of the alternative writ, and continues unabated, not only until the peremptory writ issues but until obedience thereto is enforced.

(3)   The allowance of the writ of error did not operate to remove the suit from the supreme court of the state to the supreme court of the United States but merely operated to bring up the record for review.

(4)   The allowance of the writ of error did not supersede the judgment; the taking of the bond brought about the supersedeas.

(5)   The damages in mandamus proceedings comprehended by section 723 of the code are the injuries sustained as the natural and probable consequences of the wrongful refusal to comply and the expense reasonably and necessarily incurred in compelling compliance with the alternative writ, including reasonable attorneys' fees in this court and in the supreme court of the United States.

(6)   Damages incurred prior to the issuance of the alternative writ cannot be recovered.

(7)   Damages for loss of profits may be recovered where the amount of such loss and the fact that it resulted by defendant's refusal to comply with the alternative writ can be determined by the court with reasonable certainty.

(8)   In such an action where the defendant claims in mitigation of damages that plaintiff might and should have compelled it to furnish cars by serving a written demand and making the cash deposit provided by the statute, the burden rested upon the defendant to show that it stood ready to furnish the service upon such demand.

(9)   In view of the undisputed character and importance of the litigation, the services performed and the results obtained, the amounts allowed by the commissioner as attorneys' fees for plaintiff's attorneys are approved.

(10)   The defendant claimed that plaintiff was not entitled to recover any damages because during the time the damages arose plaintiff was a member of an organization in violation of the antitrust laws. *Held,* that the plaintiff was entitled to recover whatever damages it sustained by the wrongful suspension of the transfer service unless the service sought to be enforced by the mandamus was a necessary part of the purposes of such unlawful trust or combination.

Original proceeding in mandamus.   Opinion filed July 7, 1911.   Judgment for the plaintiff for damages.

*Joseph G. Waters, John C. Waters, Charles Blood Smith,* and *John F. Switzer,* for the plaintiff.

*B. P. Waggener,* for the defendant.

The opinion of the court was delivered by

PORTER, J.: In this case judgment awarding a peremptory mandamus was rendered December 8, 1906, and the defendant railway company was ordered to resume the transfer service for the plaintiff. (*Larabee v. Railway Co.*, 74 Kan. 808.) Thereafter defendant sued out a writ of error to the supreme court of the United States, where the judgment was affirmed. (*Missouri Pacific Ry. v. Larabee Mills*, 211 U. S. 612.) After the affirmance of the judgment by that court the plaintiff filed here a claim for damages arising out of the defendant's refusal to furnish transfer service covering the period from the suspension of such service, August 29, 1906, until it was resumed under the peremptory writ. The Hon. H. C. Sluss was appointed commissioner to take the testimony and report his findings of fact and conclusions of law. The report has been made, and a number of exceptions have been filed thereto by the plaintiff and by the defendant.

The plaintiff's principal objection arises over the disallowance of a claim for the loss of profits covering a period of 117 days, at $100 per day, and aggregating $11,700. The basis of this claim is the alleged inability of the mill company to grind corn and market corn products.

The commissioner's findings and his reasons for disallowing the claim are stated as follows:

"I find from the evidence that the mill company's mill is equipped for grinding corn and the production of corn products, and has a maximum capacity of 100,000 pounds of corn per day; that the mill company ground but little corn during the period of the suspension of the transfer service. There is no evidence of the price of corn or of corn products during that period, or of the cost of manufacture; nor evidence of the work and profits of other mills of similar character and similarly located as the mill company's; the only evidence being the estimate of witnesses based on the maximum capacity of the mill, and the fact that it was an unusu-

ally good corn year, and the fact that the mill company had made money in handling corn through their elevator located on the Santa Fe during the same period, and the belief of the witness that the mill company could have ground a large amount of corn, and that the [in] view of the conditions it would have yielded a profit of ten cents per hundred pounds. I conclude that the evidence is too indefinite and uncertain, based too largely upon estimate, opinion and assumption to justify a finding that there was a loss of profit by reason of inability to grind corn, or if there was a loss, how much it amounted to; and I find the claim not proven."

These conclusions are in harmony with settled rules respecting damages for loss of profits, and meet with our approval. It is true, as said by Judge Brewer in the opinion in *Hoge v. Norton,* 22 Kan. 374, cited by the plaintiff:

"It is not always easy to draw the line between profits that are a legitimate element of compensation and those that are too remote, contingent or uncertain. The old idea that profits were never recoverable was long since exploded; and now, even in actions on contract, it is said that they may be recovered when proximate and certain. 'The general rule is that the party injured by a breach of contract is entitled to recover all his damages, including gains prevented as well as losses sustained, provided they are certain and such as might naturally be expected to follow the breach. It is only uncertain and contingent profits, therefore, which the law excludes.' (*Griffin v. Colver,* 16 N. Y. 489.)" (p. 379.)

The difficulty here is, that from the evidence presented the commissioner was not able, nor are we able, to determine with reasonable certainty that any loss of profits was occasioned by reason of plaintiff's inability to grind corn, or the amount of such loss, if any.

The commissioner rightly refused to allow any damages to the mill company for losses which it claimed to have sustained by the suspension of transfer service prior to the issuance of the alternative writ, holding that up to that time it was optional with the plaintiff to avail itself of mandamus or to pursue its remedy in

an ordinary action for damages, and that the only power of this court to award damages is by virtue of its jurisdiction in the mandamus proceeding, and that such jurisdiction had its inception with the alternative writ. The provision of the code authorizing the allowance of damages in mandamus proceedings is:

"If judgment be given for the plaintiff, he shall recover the damages which he shall have sustained, to be ascertained by the court or jury, or by referees, as in a civil action, and costs." (Civ. Code, § 723.)

(*McClure v. Scates*, 64 Kan. 282.)

Objection is made by the defendant to the allowance of certain claims for wages of men and teams in hauling flour, grain and mill stuffs to the Santa Fe tracks, and the contention is made that it was the duty of the plaintiff to mitigate its damages by all reasonable means within its reach, and that it was within its power to have compelled the defendant railway company to furnish all the cars needed to reach common points by serving a written demand and making the cash deposit provided by the statute. The commissioner held that the burden of proof was upon the defendant to show that to the knowledge of the mill company the defendant was prepared to furnish and ready and willing to furnish to the mill company promptly, on reasonable request, such cars as were needed to enable it to deliver its product to common points as promptly and satisfactorily as could be done by shipment over the Santa Fe in the manner the particular shipments were made, and that there was a failure of proof on the part of defendant to establish this contention. Upon the statement of the facts, the conclusions of the commissioner appear to be sound, and to require no elucidation or comment. The defendant objects to the allowance of this claim, aggregating $2386.86, on the further ground that the only evidence in support of it was incompetent. We have examined the evidence of the witness, Larabee, and agree with the

commissioner's conclusion that it was not secondary or hearsay, that it was competent, and that the objections to its admission were properly overruled.

One of the main controversies is over the allowance of attorneys' fees for plaintiff's attorneys. The ninth claim, for the sum of $2500 for services of Waters & Waters in bringing and prosecuting the mandamus proceeding, was allowed, the commissioner finding that mandamus was a proper and necessary proceeding to be instituted by the mill company, that Waters & Waters were employed for that purpose, that they instituted and successfully conducted the same, and that their services were reasonably worth the amount claimed. It is sufficient to say that we approve the finding and the allowance of the claim.

The tenth, twelfth, thirteenth, fourteenth and fifteenth claims are for the professional services and expenses of attorneys employed by the mill company to represent it in the supreme court of the United States. The contentions of the defendant respecting these claims are so clearly stated and so fully met and answered by the commissioner that we quote from his report, as follows:

"Upon these claims I find, that, following the judgment of this court awarding the peremptory mandamus, the Pacific company caused a writ of error to be issued December 24, 1906, to the supreme court of the United States from said judgment, and on the same day filed a supersedeas bond in this court, which bond was approved by the court, and thereupon the Pacific company filed its petition in error in the supreme court of the United States, together with its transcript of the record and of the cause. The Pacific company presented the following assignments of error:

"That the supreme court of Kansas erred:

"(1) In deciding that the switching service required was not in any part interstate commerce.

"(2) In deciding that the subject matter of the suit was not governed by the acts of congress regulating commerce.

"(3) In deciding that the Pacific company was under

obligation to perform the transfer service required of loaded cars destined to points without the state of Kansas.

"(5) In deciding that it had jurisdiction to compel the Pacific company to render the transfer service required in the carriage of property subjects of interstate commerce destined to points without the state of Kansas.

"(6) In assuming jurisdiction of the suit in so far as it involved the carriage of property the subject of interstate commerce.

"(7) In deciding that chapter 345, Laws of 1905, of Kansas, was not invalid in so far as it attempted to compel the transfer or carriage of property subject to interstate commerce destined to points without the state of Kansas."

The commissioner finds that these assignments of error and the propositions involved therein "were supported by a masterly and exhaustive analysis of the provisions of the constitution and the statutes and decisions" bearing upon the subject in the briefs of the defendant's counsel. The report then proceeds as follows:

"It was reasonably necessary for the mill company to employ counsel to represent it in the supreme court of the United States of professional standing, learning and experience to adequately combat the contentions and answer and arguments of counsel for the Pacific company. For this purpose the mill company employed, in addition to Waters & Waters, W. H. Rossington, Charles Blood Smith and John F. Switzer, who were well equipped and qualified to adequately present the case of the mill company to the supreme court of the United States. The compensation and expenses of these gentlemen under that employment constitute the ninth, tenth, eleventh, twelfth, thirteenth, fourteenth and fifteenth claims of damages filed by the mill company."

The contentions of the defendant are that these claims cover expenses incurred in the supreme court of the United States and not in this court, that the judiciary act of the United States (4 Fed. Stat. Anno.,

Larabee v. Railway Co.

pp. 195-734) deprives this court of all power to allow in this proceeding any damages or expense incurred as a result of the proceeding in error, that the supersedeas bond taken at the time the writ of error was allowed was conditioned that the plaintiff in error should answer all damages, and that the only remedy of the mill company was to apply to the supreme court of the United States for the allowance of its claim for damages, and that upon the affirmance of the judgment in this case that court did allow to the mill company the sum of $20 as and for its counsel fees in that court.

Again, the conclusions of the learned commissioner are so clearly and forcibly stated that we adopt them as a part of our opinion. His language is:

"Upon this objection I conclude:

"(1) That the jurisdiction of this court in mandamus is the creation of the constitution and the statutes of the state of Kansas.

"(2) That this court is the sole judge of what that constitution and those statutes provide.

"(3) That the jurisdiction of this court in mandamus over persons within its jurisdiction can not be affected by act of congress.

"(4) That the judiciary act does not and was not intended to affect the jurisdiction of this court.

"(5) That the jurisdiction of this court in mandamus attaches upon the issuance of the alternative writ, and the subject matter of the proceeding being the awarding a peremptory mandamus, that jurisdiction continues unabated, not only until the writ is awarded, but also until the writ is issued and obedience to it enforced.

"(6) That the alternative writ is a command of the performance of specified and prescribed duties; and return to the writ is a refusal to perform the duties prescribed; the judgment awarding a peremptory mandamus is a conclusive adjudication that such refusal was wrongful, and the act of the court compelling compliance with the command of the alternative writ.

"(7) That the damages comprehended by the Kansas statutes are the injuries sustained as the natural and

probable consequences of the wrongful refusal to comply and the expenses reasonably and necessarily incurred in compelling compliance with the command of the alternative writ.

"(8) That the allowance of the writ of error did not operate to remove the suit from the supreme court of the state into the supreme court of the United States; its only effect was to bring up the record for purposes of review.

"(9) The allowance of the writ of error did not operate as a supersedeas; the taking the supersedeas bond brought about the supersedeas. The taking the bond, and the supersedeas itself, in so far as it can be conceived of as a substantial act, was the action of the supreme court of Kansas.

"I conclude that the objection should be disallowed, and a claim for the reasonable compensation of the attorneys mentioned for their services in the case in the supreme court of the United States, and their reasonable and necessary expenses, should be allowed as part of the damages sustained by the mill company."

The commissioner also finds that no agreement has ever been made between the mill company and any of its attorneys as to the amount of their compensation, and that the attorneys will claim and accept in full discharge of plaintiff's liability to them whatever amount the court shall determine to be reasonable and allowed as part of the plaintiff's damages. After reciting at some length the character of the service performed by the plaintiff's attorneys in the preparation of their briefs and arguments in answer to the defendant's contentions in the controversy the commissioner concludes from all the evidence that a reasonable allowance for the services of Waters & Waters in the supreme court of the United States is the sum of $5000, and a like sum was allowed for the services of W. H. Rossington and Charles Blood Smith. The attorneys were also allowed their expenses in attending court. To John F. Switzer was allowed $500 for services in the preparation of briefs.

A number of attorneys well known to the court were called as witnesses by both parties and gave their opinions as to what were reasonable attorneys' fees for the services in question. As usual in such cases there was a wide divergence of opinion expressed. The commissioner found that these opinions were given in answer to two sets of hypothetical questions, propounded by the plaintiff and defendant respectively, and without opportunity on the part of the witnesses to give the question of what was really involved in the case a thorough and careful study; and he concludes that none of the witnesses had given the elements of the case such study and consideration as would justify the court in adopting the opinions of any of them as a basis for its judgment. The commissioner, calling to his aid his own general knowledge and professional experience, and considering all the circumstances in evidence, "the character and the importance of the litigation, the labor and time necessarily involved therein and the result of the same" (*Noftzger v. Moffett,* 63 Kan. 354, 359), proceeded to find the several amounts which he believed to be reasonable compensation for the services rendered. This he was warranted in doing. The opinions of expert witnesses in such cases are never conclusive upon the court and were not conclusive upon the commissioner. (*Noftzger v. Moffett,* supra; *Bentley v. Brown,* 37 Kan. 14.) The service performed, the character and importance of the litigation and the result obtained thereby are all conceded; and these elements, as held in *Noftzger v. Moffett,* supra, must be considered by the court, and furnish a sufficient basis upon which to determine what are fair and reasonable amounts to be allowed as compensation for the attorneys. In view of these considerations we are not inclined to disturb the findings of the commissioner or to regard the allowances as excessive or unreasonable.

The claims allowed by the commissioner and approved by the court are as follows:

"First claim.—For expense of hauling flour, grain and mill stuffs from mill to Santa Fe tracks ....... $2,386 85

"Second and third claims.—Wages of men unloading flour transferred by teams.................... 1,381 25

"Fourth claim.—Loss resulting from closing down of mill thirteen and one-half days ............... 1,890 00

"Ninth claim.—Waters & Waters, attorneys' fees in this court ................................... 2,500 00

"Tenth, twelfth, thirteenth, fourteenth and fifteenth claims.—Attorneys' fees and expenses in supreme court of the United States................ 11,480 00

"Seventeenth claim.—Larabee's expenses to Topeka ...................................... 186 00

"Eighteenth claim.—Expenses and per diem of plaintiff and counsel at St. Louis ................ 160 00

"Twenty-first claim.—F. D. Larabee, attendance on commissioner ............................... 30 00

$20,014 10

One further question remains to be considered. The defendant raised the point before the commissioner that the plaintiff is not entitled to recover any damages in this proceeding for the reason that the mill company "during the period in which the damages claimed arose, was a member of the Southern Kansas Millers' Commercial Club; that this club was an association of millers, and the object and purpose of it was to control the price of wheat and flour, and prevent competition in the purchase of wheat and in the sale of flour, and included in its membership and allied associations substantially all the persons engaged in the milling business throughout Kansas, Oklahoma and Texas; and was an organization in violation of the antitrust laws of Kansas."

A large amount of evidence was taken which tended strongly to prove this charge, although it was not sufficient to satisfy the commissioner that it had been established. It becomes unnecessary for us to weigh the evidence because of a further finding of the commissioner, which appears to be supported by the evidence, that the performance of the switching service, which

was the subject matter of this action, was no part of the purpose of the organization of the Southern Kansas Millers' Commercial Club, and in no sense a part of or necessary to the carrying out of any of the purposes for which the club was organized. Under the authority of *Barton v. Mulvane,* 59 Kan. 313, 317, the plaintiff is entitled to recover whatever damages it has sustained by the wrongful suspension of the transfer service unless the service sought to be enforced was a necessary part of the purposes of some unlawful trust or combination, and unless some violation of the trust law entered into was a part of the cause of action in the original proceeding. To the same effect are: *Bement v. National Harrow Co.,* 186 U. S. 70; *Connolly v. Union Sewer Pipe Co.,* 184 U. S. 540; *Loeb v. Columbia Township Trustees,* 179 U. S. 472, 479; *Embrey v. Jemison,* 131 U. S. 336, 348; *National Distilling Co. v. Cream City Importing Co.,* 86 Wis. 352, 355.

It follows from what has been said that the report of the commissioner is approved and his findings and conclusions of law are confirmed.

WEST, J., not sitting.

BENSON, J. (dissenting as to one item): I concur in the foregoing opinion except that part confirming the report of the commissioner relative to attorneys' fees for services in the supreme court of the United States. The commissioner reports: "I find that the mill company has incurred a liability to ————— (naming attorney) for professional services in the case on appeal . . . in the sum of ——— dollars." A similar finding was made (stating name and amount) upon the claim of each of two firms, and one other attorney. Had the plaintiff employed other lawyers findings of a similar nature might have been made as to them also.

The question is not what liability the plaintiff incurred to any attorney or firm of attorneys, nor what

15—85 KAN.

number it retained, but the question is, What is a reasonable attorneys' fee for necessary services whether performed by one or many attorneys? In my opinion the commissioner should be requested to find and state the amount of a reasonable attorneys' fee for attending to the case for the plaintiff in the supreme court of the United States. The evidence reported shows that well-known attorneys of large practice differ in their estimates from $2500 to $50,000 for the services in question. In such a situation we should know what the commissioner, who has thoroughly examined every. phase of the litigation, considers a reasonable fee.