No. 15,167.

THE LARABEE FLOUR MILLS COMPANY, *Plaintiff*, v. THE
MISSOURI PACIFIC RAILWAY COMPANY, *Defendant*.

SYLLABUS BY THE COURT.

MANDAMUS—*Refusal to Transfer Cars—Damages—Attorney's
Fees and Expenses in U. S. Courts Not Recoverable—Appli-
cation to File Plea in Abatement and Answer Denying Juris-
diction Comes Too Late—Judgment as per Mandate of U. S.
Court Ordered.* An action to compel the railway company to
perform a duty in moving cars resulted in the allowance of a
peremptory writ of mandamus. The defendant in a plea in
abatement and in an answer to the alternative writ had denied
the jurisdiction of this court, alleging that the service de-
manded was a part of interstate commerce. The same con-
tention was made in the supreme court of the United States
which reviewed the judgment of this court, but the judgment
was affirmed. Meanwhile in proceedings in the same action
a judgment was rendered for damages against the railway
company. On a review of that judgment in the supreme
court of the United States, it was held that error was commit-
ted in allowing as damages items of attorneys' fees and ex-
penses in the supreme court of the United States, but that
from a federal point of view there was no error in the judg-
ment to the extent that it awarded damages complained of
and allowed a claim for atorneys' fees in the state court. To
give effect to these conclusions the judgment was reversed and
the cause remanded for further proceedings not inconsistent
with the opinion. Pending the entry of judgment on the man-
date containing these directions the defendant presented a
plea in abatement and a proposed answer setting up with
greater amplitude provisions of the interstate commerce acts,
alleging that they deprived this court of jurisdiction, and
pleading especially that it had filed a schedule of rates for
the services in question which had been approved by the In-
terstate Commerce Commission and praying that the court
should proceed no further except to dismiss the action.

It is held (1) that the original pleadings were sufficient to
admit the proof respecting the schedule referred to; (2) that
the jurisdictional question was determined by the judgment of
this court and that of the supreme court of the United States,
at least so far as it was presented, and every fact available
for that purpose now was equally available at the trial; (3)
that if the reference to the schedule should be considered as

a new feature of the pleading it should not now be allowed in order to present a federal question not before raised; and (4) that judgment should be entered upon the mandate for the damages which the reviewing court held were not .erroneously allowed.

Original proceeding in mandamus. Opinion denying application to file plea in abatement and answer filed January 9, 1915. Judgment ordered entered as directed by the supreme court of the United States. Opinion denying a rehearing filed April 10, 1915.

*Joseph G. Waters, John C. Waters, Charles Blood Smith,* and *John F. Switzer,* all of Topeka, for the plaintiff.

*B. P. Waggener, W. P. Waggener,* and *A. E. Crane,* all of Atchison, for the defendant.

The opinion of the court was delivered by

BENSON, J.: The plaintiff asks to have the mandate of the supreme court of the United States enforced by the entry of a judgment directed in accordance with the opinion of that court. The defendant presents a plea in abatement and answer denying the jurisdiction of the court to take any further proceedings except to dismiss the action.

The history of this case is written in two previous opinions of this court, viz., *Larabee v. Railway Co.,* 74 Kan. 808, 88 Pac. 72, and 85 Kan. 214, 116 Pac. 901, and two opinions of the supreme court of the United States, viz., *Missouri Pacific Ry. v. Larabee Mills,* 211 U. S. 612, and *Missouri Pacific Ry. Co. v. Larabee,* 234 U. S. 459. A claim for damages having been made on the trial in this court, proceedings were taken to determine the amount, and damages were assessed against the defendant, including, among other items, attorneys' fees for services for the plaintiff in the supreme court of the United States. This proceeding

is reported in 85 Kan. 214. That judgment was reviewed in the federal supreme court, and the opinion is reported in 234 U. S. 459. The concluding paragraph of that opinion is:

"It follows from what we have said that error was committed in the court below in allowing the items of damages for attorneys' fees, traveling expenses, etc., in the Supreme Court of the United States, and that from a Federal point of view there was no error in the judgment below to the extent that it awarded the damages complained of and allowed a claim for attorneys' fees for services rendered in the state court. And to give effect to these conclusions the judgment must be reversed and the case remanded for further proceedings not inconsistent with this opinion." (p. 475.)

Pending proceedings to enter judgment in this court in accordance with the mandate, the defendant presented a motion for leave to file an amended and supplemental answer. No notice having been given of the application, the leave was granted, to be treated, however, as an application for leave to file in case the filing should be opposed. Afterward a plea in abatement with answer attached was filed by the defendant. Thereupon, the plaintiff moved to set aside the order granting leave to file, and asked for judgment as required by the mandate.

On the argument of this motion, the court orally referred to the circumstances and condition upon which the leave to file had been given. In a brief filed later, the defendant protested against being compelled to assume the position of still asking leave to file its plea in abatement and answer. The practice adopted, however, is that usually followed in such a situation, and is entirely fair to both parties, affording to each an opportunity to be heard upon the question whether the proposed new pleadings should be filed at this advanced stage of the litigation.

The plea in abatement consists largely of literal quotations from various federal statutes regulating commerce, and challenges the jurisdiction of this court

over the subject matter of the action on the ground that by virtue of these regulations and the filing and approval of a schedule of rates, exclusive jurisdiction was vested in the Interstate Commerce Commission and the federal courts.

It will be observed that if this challenge is sustained, litigation extending over eight years, embracing two appeals to the supreme court of the United States, determining, if effectual, a question of great importance to the plaintiff and to shippers and carriers, will come to naught. There is no suggestion that proceedings of the Interstate Commerce Commission or acts of the defendant present a situation different in any respect from the one existing and known at the time of the trial and since. It is said, however, that there was, during all this time, a fatal absence of power, and that this entire fabric of litigation must therefore fall. If the alleged defect was disclosed and brought to the attention of the court by the pleadings or proceedings, the jurisdictional question was necessarily determined, not only by this court, but by the decisions of the supreme court of the United States affirming the judgment that had been rendered here.

Turning to the pleadings making up the issue upon which the mandamus was allowed, it is found that a plea in abatement was first interposed September 24, 1906, in which the defendant alleged, as it does again in the plea in abatement now presented, that both the defendant company and the Santa Fe company, whose lines are connected by the transfer track over which the requested service was refused, were interstate carriers engaged in interstate commerce, and as such amenable to the laws of the United States regulating commerce. It was also alleged that the plaintiff's mill and elevators were operated in the purchase, sale and shipment of grain and flour at and from its location in

Stafford over the defendant's interstate railroad to various states and foreign countries. It was further alleged:

"Defendant further says that, under the terms and provisions of the Amended Interstate Commerce Act, as passed by the Congress of the United States, and which took effect on the 28th day of August, 1906, there is vested in the Interstate Commerce Commission full and exclusive power and jurisdiction to hear, try and determine all the matters and things in controversy, mentioned and set forth in the said alternative writ of mandamus."

In the answer filed on October 10, 1906, the allegations made in the plea in abatement respecting the interstate character and business of the two railroad companies and respecting the interstate nature of the business of the plaintiff are in substance repeated, and it is alleged that:

"Under the terms and provisions of the amended Interstate Commerce Act as passed by the Congress of the United States, and which took effect on the 28th day of August, 1906, there is vested in the Interstate Commerce Commission full and exclusive power and jurisdiction to hear, try and determine, all the matters and things in controversy mentioned and set forth in the said alterative writ of mandamus, and that neither the state of Kansas, nor any court or commission of said state, has the right, power, authority or jurisdiction to hear and determine any question or controversy arising under the pleadings and issues of this case."

The new plea in abatement and proposed answer now presented set out in greater amplitude the interstate character of the business of the two railroad companies and their track connections at Stafford and the business of the plaintiff, together with quotations from the federal laws concerning interstate commerce and averments that this court has no jurisdiction over the subject matter of this suit, but nothing is found in the new pleadings now presented that is not in substance, at

least, and in sufficient detail, contained in the pleadings upon which the case was tried, unless it is the following averments of the proposed new answer.:

"That prior to September 1st, 1906, the said defendant and said Santa Fe Company had each filed with the Interstate Commerce Commission, a schedule of freight tariffs to be by each charged on transportation of freight consigned to and from said station of Stafford, Kansas, including a switching or terminal charge of $2.00 per car to be charged by the said defendant, and also by the said Santa Fe Railway Company, on cars transferred by either of said companies over said terminals from or to said Larabee Mills, so located as aforesaid on the track of said defendant; and said terminal or switching tariff, so filed by said respective companies, applied, by special reference therein, to said Larabee Flour Mills Company, and remained in force and was effective from long before said date, continuously until long after July 1st, 1907, and each, the plaintiffs, said defendant and said Santa Fe Company, in the handling and moving of said freight from and to said Larabee Flour Mills, had submitted themselves to the jurisdiction, supervision and control of the said Interstate Commerce Commission, in accordance with the terms, provisions and conditions of the Act of Congress to regulate commerce and the amendments thereto; and the defendant avers that all such tariffs and schedules of rates, switching and terminal charges, so filed as aforesaid, were approved, ratified and confirmed by said Commission as provided by said Act of Congress; and the said terminals and switching facilities of said respective companies at Stafford were each and all instrumentalities of interstate commerce, and for several years prior to September 1st, 1906, and ever since, were maintained and operated by said companies under rules and regulations prescribed and promulgated by said Commission under and in compliance with said Act of Congress, and such rules and regulations were especially designed and intended for the handling and moving of the products of said Larabee Flour Mills, over and along the terminals of each this defendant and the said Santa Fe Company, and said plaintiffs for years prior to September 1st, 1906, were a party to and accepted such rates and terminal charges."

According to these averments the defendant filed its schedules with the Interstate Commerce Commission prior to September 1, 1906. Whether before or after the date of its refusal to perform the service, which was the ground of the plaintiff's action, is not stated. Passing by that matter, however, it will be observed that there was no question of rates nor of any incidental details of the service, but the complaint was that the defendant refused to perform the service. The wrong consisted in refusing to render any service—whether interstate or intrastate—in respect to receiving and delivering cars at the plaintiff's mill. Among the findings of fact on the trial of this action was the following:

"The refusal to make such delivery was not based upon a claim that the compensation paid for the service was not satisfactory, nor upon a claim that any part of such service constituted a part of interstate commerce, nor upon a claim that the Missouri Pacific did not undertake to perform such service." (*Larabee v. Railway Co.*, 74 Kan. 808, 814, 88 Pac. 72.)

The act to regulate commerce, as amended by the act of March 2, 1889 (25 U. S. Stat. at Large, ch. 382, § 9, p. 862), and February 8, 1895 (28 U. S. Stat. at Large, ch. 61, p. 643), provides:

"Nothing in this Act contained shall in any way abridge or alter the remedies now existing at common law or by statute, but the provisions of this Act are in addition to such remedies:" (24 U. S. Stat. at Large, ch. 104, § 22, p. 387.)

It was said in the first opinion:

"It is Hornbook law that a carrier can not renounce as against some disfavored shipper the public duty which it assumed when it engaged in the kind of transportation business which it offers to conduct. Being a common carrier for all, the defendant must switch all cars tendered for that purpose, including those intended for the mill company. It is equally elementary that a carrier may be compelled by mandamus to perform duties of this kind to an aggrieved shipper." (*Larabee v. Railway Co.*, 74 Kan. 808, 817, 88 Pac. 72.)

44—94 KAN.

Nothing in disapproval of the paragraph above quoted is found in the opinion of the supreme court affirming the judgment, and no reference is made to the clause of the federal statute preserving common-law remedies. It was said, however:

"It is also true that the Missouri Pacific was a common carrier, and as such was engaged in the work of transferring cars from the Santa Fe track to the mill company, and after this controversy arose continued like transfer for all industries located on the Missouri Pacific at Stafford, except the mill company. While no one can be compelled to engage in the business of a common carrier, yet when he does so certain duties are imposed which can be enforced by mandamus or other suitable remedy. . . . It is not contended that the commission has taken any action in respect to the particular matters involved. It may never do so, and no one can in advance anticipate what it will do when it acts. Until then the authority of the State in merely incidental matters remains undisturbed. In other words, the mere grant by Congress to the commission of certain national powers in respect to interstate commerce does not of itself and in the absence of action by the commission interfere with the authority of the State to make those regulations conducive to the welfare and convenience of its citizens. Running through the entire argument of counsel for the Missouri Pacific is the thought that the control of Congress over interstate commerce and a delegation of that control to a commission necessarily withdraws from the State all power in respect to regulations of a local character. This proposition can not be sustained. Until specific action by Congress or the commission the control of the State over these incidental matters remains undisturbed. . . . This common-law duty [of a carrier] the State, in a case like the present, may, at least in the absence of Congressional action, compel a carrier to discharge." (*Missouri Pacific Ry. v. Larabee Mills*, 211 U. S. 612, 619, 623, 624.)

The questions of jurisdiction as affected by the federal regulations of commerce were presented as fully as counsel desired, and were considered as fully as presented, and were finally decided adversely to the de-

fendant's contentions.  The pleadings were sufficiently comprehensive to admit proof of the filing and approval of schedules of rates and any action of the Interstate Commerce Commission and of the defendant affecting these matters.

It seems plain that in the present stage of the litigation the case should not be opened to admit proof which was easily available and might have been offered at the trial.  Treating the question, however, as one of pleading only, and conceding for the moment that the original pleadings were insufficient to admit proof of the filing and approval of the schedules, should new pleadings be allowed at this time?  A similar effort was disapproved in *Louis. & Nash. R. R. v. Higdon,* 234 U. S. 592.  The action was for damages for failure to furnish cars at Higdon's mine.  No federal question had been raised in the trial or upon appeal to the Kentucky court of appeals when the case was remanded by that court for a new trial in the circuit court.  The defendant railroad company then tendered two amended answers, but leave to file was refused.  The second amended answer pleaded that the service demanded would be a direct, unreasonable and unwarrantable interference with the interstate business of the company and a burden upon interstate commerce.  The case having been decided adversely to the railroad company, for the second time in the court of appeals, it was taken to the supreme court of the United States where it was said:

"Had the Court of Appeals put its decision upon the ground that the duty of the Circuit Court was simply to give effect to the judgment of the Court of Appeals by enforcing the rights of the parties upon the principles settled by it in its first decision and that the attempt to inject Federal questions into the record by amended pleadings after the case was remanded did not seasonably raise Federal questions reviewable by the Court of Appeals, the case would be ruled by *Union Mutual Life Ins. Co. v. Kirchoff,* 169 U. S. 103, in

which this court held that such attempts to raise Federal questions came too late to lay the foundation for review here. See, also, *Yazoo & Mississippi Valley Ry. Co. v. Adams,* 180 U. S. 1; *Bonner v. Gorman,* 213 U. S. 86." (p. 597.)

It will be observed that the federal question sought to be raised in that case related to the regulations of interstate commerce as in this case. Here these regulations were pleaded and considered originally, but if by the amended pleadings now offered another phase of these regulations is pleaded not presented before, then an attempt is made to raise another federal question, which falls under the condemnation of the case last cited. Indeed the condemnation applies with added force since the amendments are first proposed after two hearings in this court, and two appeals to the federal supreme court, and at a time when no issue remains to be tried.

The exclusiveness of the jurisdiction over proceedings to enforce the remedial provisions of the commerce acts must be distinguished from the concurring jurisdiction of state courts over questions which, although incidentally involving interstate commerce, do not arise from or are not based on violations of these acts. This distinction was considered in *Murray v. Chicago & N. W. Ry. Co.,* 62 Fed. 24, cited in *Western Union Tel. Co. v. Call Pub. Co.,* 181 U. S. 92, to the point that the principles of the common law are operative upon interstate commercial transactions except so far as modified by congressional enactment. In *Balt. & Ohio R. R. v. Pitcairn Coal Co.,* 215 U. S. 481, relating to the distribution of cars at a coal mine in a situation involving a complexity of facts, the court in considering section 10 of the act of congress of March 2, 1889 (25 U. S. Stat. at Large, ch. 382, pp. 855, 862), a new section allowing an action in the circuit or district courts of the United States to recover

damages for violations of the provisions of the act, said:

"The remedy afforded by that section, in the cases which it embraces, must be limited either to the performance of duties which are so plain and so independent of previous administrative action of the commission as not to require a prerequisite exertion of power by that body, or to compelling the performance of duties which plainly arise from the obligatory force which the statute attaches to orders of the commission, rendered within the lawful scope of its authority, until such orders are set aside by the commission or enjoined by the courts." (p. 499.)

In this case it is manifest that the duty which the defendant refused to perform was so plain that a previous action of the commission conceding its power to act was unnecessary to make that duty more imperative. Certainly the language of the supreme court above quoted is applicable to this situation. True, the provision there considered related to the jurisdiction of federal courts, but the duty enforced in this action was a common-law duty which the state courts had a right to enforce unless excluded by the interstate commerce regulations, whose action it seems need not be invoked in case the duty is so simple as not to reasonably require it. This view seems also to be in harmony with the theory of the defendant at the trial, for, as before stated, its refusal to perform the service was not based upon the claim that it was a part of interstate commerce.

It is concluded that in the present situation the duty of the court is to enter judgment as directed by the reviewing court, and to set aside the formal order allowing the answer to be filed, no sufficient reason appearing for making the order.

Judgment will be entered accordingly.

## OPINION DENYING A REHEARING.
### Filed April 10, 1915.

*Per Curiam:* On July 15, 1914, the attorneys for the plaintiff presented to this court the mandate of the supreme court of the United States and moved that it be entered of record. The motion was allowed and the mandate was duly spread upon the journal of this court. The judgment of the supreme court of the United States affected nothing but items of damages, for attorney's fees, traveling expenses, etc., allowed on account of services rendered in the supreme court of the United States, and when the mandate was entered a judgment was entered taking the action which it directed. This is the practice of the court in all cases unless the clerk be directed by special order to withhold entry of judgment pursuant to the mandate. Two motions, one to enter the mandate and another to proceed according to its directions, are not necessary, and the court of its own motion proceeds at once upon entering a mandate requiring further action on its part to execute it.

Soon after the mandate had been entered the proceedings recited in the opinion filed January 9, 1915, were instituted by the defendant, whereupon the cause was treated as open to both parties to present for the consideration of the court such matters as they deemed essential to the protection of their rights. The result is stated in the opinion referred to. The plea in abatement is a part of the answer and goes out of the case with the answer without special designation.

A petition for a rehearing duly filed by the defendant has been considered and is denied.