No. 19,943.

L. M. HICKS, *Plaintiff*, v. W. E. DAVIS, as State Auditor, etc., *Defendant.*

#### SYLLABUS BY THE COURT.

EXECUTIVE OFFICERS—*Not Personally Liable for Errors in Judgment.* Rule followed that executive officers are not liable for errors in the performance of duties involving discretion and judgment, in the absence of malice, oppression in office or willful misconduct. (*Railroad Co. v. Nation*, 83 Kan. 237, 109 Pac. 783.)

Original proceeding in mandamus. Opinion filed March 10, 1917. Motion for allowance of damages denied.

*W. A. Snook*, of Kansas City, for the plaintiff.

*S. M. Brewster*, attorney-general, *S. N. Hawkes*, and *John L. Hunt*, assistants attorney-general, for the defendant.

The opinion of the court was delivered by

DAWSON, J.: This is a motion to allow damages under section 723 of the civil code against W. E. Davis, personally, because judgment went against him in his official capacity as state auditor (*Hicks v. Davis*, 97 Kan. 312, 154 Pac. 1030; 97

Kan. 662, 156 Pac. 774) in an application for a writ of man-
damus to require him to audit a claim and to issue a warrant
therefor in favor of plaintiff for a sum of money allowed to
him by the legislature.

It is contended that the defendant auditor's duty was purely
ministerial. But the functions of a state auditor are more
than those of a mere ministerial officer. The constitution,
which creates the office of state auditor (art. 1, § 1), does not
define his duties. Therefore they are those which pertained
to that office at common law. These are well set forth in *The
People v. Green,* 5 Daly (N. Y. Com. Pleas), 194, where it was
said:

"What is an auditor? Originally it meant an officer of the king,
whose duty it was, at stated periods of the year, to examine the accounts
of inferior officers and certify to their correctness (Blount's Dictionary
of 1681; Cotgrove's Dictionary of 1632; Rastall's Termes de la Ley;
DeFoe's English Dictionary of 1732), and was afterwards used to desig-
note those officers of the Court of Exchequer whose duty, according to
Coke, was to take the accounts of the receivers of the king's revenue and
'audit and perfect them,' without, however, putting in any changes, their
office being only to audit the accounts—that is, ascertain their correct-
ness (4 Coke's Inst. 107). The very object of examining and auditing
an account is to ascertain whether there are any errors or mistakes in
it, and hence the definition of the verb 'to audit,' which is to examine,
settle and adjust accounts—to verify the accuracy of the statement sub-
mitted to the auditing officer or body (McElrath's Com. Dict.). 'At the
present day,' says Wedgewood, one of the last writers upon the meaning
of English words, 'this term is confined to the investigation of accounts,
the examination and *allowance* of which is termed the *audit.*'" (p. 200.)

(See, also, 4 Coke's Inst. 106; Note, 6 C. J. 861.)

The legislature undoubtedly may add ministerial and other
duties not incompatible with those of an executive officer, and
many such duties have been so imposed, but the common-law
powers of the state auditor remain. As such, the auditor
must scrutinize every claim against the state, note and verify
its genuineness, satisfy himself that the claimant is the party
duly entitled thereto, that the claim is presented in due form,
that an appropriation has been duly made to meet the demand,
that the demand is clearly within the scope of the appropria-
tion act, that the act has been regularly and constitutionally
adopted, that the demand is due when made, and it is within
the auditor's province and within his powers to resolve doubt-

ful claims in favor of the public treasury. All this, of course, must be done in the utmost good faith, otherwise he may be personally penalized as the statute provides; but it would do the state as well as the auditor a great injustice to announce a rule that the auditor would subject himself to a personal liability in every case when it was finally adjudicated that he had erred on the side of the public by refusing to audit and honor a questionable demand against the state. That rule would tempt the auditor to consider the chances of a personal liability for errors in judgment, when his mind should be free to conscientiously consider the merits and legality of claims against the state, fearless of personal consequences. Such duties as these which we have outlined, and many similar duties imposed by law upon the auditor, are of too great importance and call for too much prudence, judgment and discretion to be characterized as merely ministerial. (29 Cyc. 1443-1445.) The instant case does not differ in principle from the doctrine announced in *Railroad Co. v. Nation,* 83 Kan. 237, 109 Pac. 783.

The motion is denied.