No. 25,222

THE STATE OF KANSAS, ex rel. HARRY E. SNYDER, as County Attorney, *Appellee,* v. THE KANSAS ELECTRIC POWER COMPANY, *Appellant.*

SYLLABUS BY THE COURT.

1. ELECTRICITY—*Franchise for Transmission of Electric Current Between Two Incorporated Cities—Petition for Election—Requisite Number of Petitioners Legally Determined.* The act (R. S. 12-824) authorizing incorporated cities, into or through which any corporation has built or proposes to build lines for the transmission of electric current between two or more incorporated cities, to grant franchises upon prescribed conditions, and providing that such franchise shall not be granted until notice of the proposition shall be given, and that if, within a prescribed time, ten per cent of the legal electors should petition the city authorities to submit the proposition to a vote of the electors of the city, it should be so submitted and the city authorities governed by the result of such vote. *Held,* on a controversy as to the sufficiency of petitions presented to the city commission asking that a proposition for such franchise be submitted to a vote of the electors, that the evidence produced failed to show that the petitions presented contained ten per cent of the legal electors of the city; and further *held* that the city commission to which was committed the power and discretion to ascertain and determine whether the petitions contained the requisite number of legal electors, having decided that they did not, its determination in the absence of evidence of fraud or misconduct of the commission, equivalent to fraud, is binding upon the parties concerned and conclusive upon the courts.

2. SAME—*Transmission of Electric Current Between Incorporated Cities— Cities Authorized to Grant Franchise.* The act referred to authorizes incorporated cities to grant franchises for the purposes named therein without regard to whether the cities are operating under a commission form of government or a mayor and council.

Appeal from Morris district court; CASSIUS M. CLARK, judge. Opinion filed May 10, 1924. Reversed.

The State, *ex rel.*, v. Electric Power Co.

*Gilbert H. Frith,* and *Louis E. Clevenger,* both of Emporia, for the appellant.

*Harry E. Snyder,* county attorney, *W. J. Pirtle,* and *Henry Torgeson,* both of Council Grove, for the appellee.

The opinion of the court was delivered by

JOHNSTON, C. J.:   This was an action in quo warranto brought by the state on the relation of the county attorney against the Kansas Electric Power Company, questioning the authority and power of the company to exercise the privileges and rights granted in an extension ordinance passed by the commissioners of the city of Council Grove on July 11, 1922.

It was alleged and shown that on March 16, 1912, the city had granted a franchise to G. W. Harlan, his successors and assigns, to maintain an electric light plant in the city with authority to lay conduits, pipes and conductors for the transmission and distribution of electric current for lighting, heating and power within the city. That franchise which does not expire until 1932 was assigned to the Kansas Electric Power Company and it is now operating under it. It is also availing itself of the privileges of the one granted on July 11, 1922, at least to the extent of issuing and selling a large amount of bonds, secured by a mortgage on its property, which mature long after the expiration of the Harlan franchise. Under the second franchise the company is authorized to operate and give service not only within the city but to supply service to persons and corporations beyond the limits of the city. It recites the provisions of the existing franchise, and also that it is the purpose and intent of the new ordinance to renew and extend the existing franchise without changing or affecting the rights, privileges and obligations which each of the parties has, except as to the extension of time and the right of the company to supply electric service to persons and corporations beyond the limits of the city. The extension franchise was granted under the authority of a statute enacted in 1921 which among other things provides:

"That such franchise shall not be granted until notice of the proposition to grant the same has been given for twenty days by publication in some newspaper in general circulation in such city, and if within said twenty days 10 per cent of the legal electors petition such city authorities to submit the same to a vote of the electors of the city, such city authorities shall submit such franchise proposition to a vote of the people before such franchise be granted and be governed by result of such vote." (R. S. 12-824.)

One ground for ouster is that the franchise was not legally granted, in that, petitions were presented to the city commission containing ten per cent of the electors of the city asking that the proposed grant be submitted to a vote of the legal electors of the city, and that this was not done. An application for the franchise accompanied by a copy of the proposed ordinance was presented to the city commission. That tribunal passed a resolution giving proper notice of the proposed ordinance, and stating that unless on or before August 15, 1922, ten per cent of the legal electors petition the city commission to submit the ordinance to a vote of the electors, it would be adopted by the commission. Within the time fixed in the notice three petitions asking for the submission of the question were presented. They contained 160 names, and the commission, after examining them, determined that they did not contain the requisite number of legal electors of the city, and thereupon the ordinance was passed and the franchise granted. The plaintiff claims that the petitions were sufficient, and therefore the city commission was without authority to pass the ordinance. There was testimony that, according to the registration records, there were 1327 electors in the city, but the city clerk who presented the records stated that he was unable to say that all were legal electors but only that they appeared to be from the registration books. According to the abstract, his was the only testimony as to the number of electors in the city and also as to the number of legal electors, among those who had signed the petitions. In regard to the petitions he stated that there were 160 names appended to them, but that he did not know how many of the petitioners were in fact legal electors. On further examination he stated that he noticed that some of the petitioners were not legal electors, and that the names of some of the petitioners did not appear on the registration books. He also testified that he did not check over the petition for the purpose of ascertaining who were legal electors, and it is manifest that his testimony does not establish the fact that ten per cent of the legal electors had signed the petitions. In the course of the trial the court said to counsel for plaintiff: "You had the city clerk testify how many electors there were as shown by the registration books and as to how many signers there are those petitions themselves will show." His response was: "That is as near as we can get at it." Attached to the petitions were verified certificates of those who circulated them stating that to the best of their knowledge and be-

lief those signing them were electors of the city. Such certificates or statements do not rise to the rank of legal evidence of the qualification of the signers.

Apart from the insufficiency of the evidence there is the finding and decision of the city commission that ten per cent of the legal electors had not signed the petition. To that commission the legislature has committed the authority to ascertain and determine the sufficiency of the petitions and whether those signing them constituted ten per cent of the legal electors of the city. This power and discretion is to be exercised by this tribunal unhampered by judicial interference unless it is shown that the act is without jurisdiction or there was fraud or some misconduct which is the substantial equivalent of fraud. Nothing approaching fraud in its action was shown or attempted to be shown. In the absence of evidence to the contrary it must be presumed that the commission acted honestly and in accordance with law, and its determination on the question submitted to it is binding alike on all parties and conclusive upon the courts. (*Meffert v. Medical Board,* 66 Kan. 710, 72 Pac. 247; *Williams v. City of Topeka,* 85 Kan. 857, 118 Pac. 866; *The State, ex rel. v. Holcomb,* 95 Kan. 660, 149 Pac. 684; *Stevenson v. Shawnee County,* 98 Kan. 671, 159 Pac. 5.)

There is a further contention by the plaintiff that the act under which the franchise was granted has no application to cities acting under a commission form of government. It is said that the act providing for that form of government contains its own provisions relating to the granting of franchises, and since the later act, 1921, did not re-enact the provisions of the earlier one as to granting franchises, it should be interpreted as only applying to cities not under the commission form of government. The act of 1921 (R. S. 12-824) expressly authorizes the granting of franchises by all incorporated cities of the state without regard to form of government under which they are operating. It provides that such cities may by ordinance grant a franchise to any corporation operating a system for the transmission of electric current between two or more incorporated cities or to one proposing to build such lines. The act is later in time than the acts referred to by plaintiff and may be said to be supplementary to them. If there be any conflict between them the later act will of course control. The city authorities with power to enact ordinances, whatever their designation, is given power to grant franchises upon compliance with the conditions

named in the act. It follows that the judgment of the trial court annulling the franchise and ousting the defendant from the exercise of any rights and privileges under the ordinance must be reversed. Under the evidence the defendant was entitled to judgment in its favor, and therefore the case is remanded with directions to enter judgment for defendant.