No. 44,932

Royal Barten, Edwin Anderes, William Kingsbury, Alfred Barten, Carolyn Barten, George Tischhauser, Alden Barten, Mara Lynne Barten, Fred Barten, Lowell Barten, Clinton Anderes, Wayne Beemer, George Piper, C. A. Piper, T. E. Piper, Albert Piper, Eleanor Murphy, William Schwartzman, Otillia Hein, and the State of Kansas, *ex rel.*, Max M. Hinkle, County Attorney of Dickinson County, Kansas, *Appellants* and *Cross Appellees*, v. Turkey Creek Watershed Joint District No. 32 of Dickinson and Marion Counties, Kansas, *Appellee* and *Cross Appellant*, and Grant Engle, Bill Harris, Gene Meuli, Louis Guthals, Delmar Sandow, Dean Rhodes, William Kohman, Lowell Abeldt, Gene Lorson, Lowell Davidson, Marvin Strunk, Felix Bolliger, Raymond Ihde and Milton Jacobson, *Appellees.*

(438 P. 2d 732)

490

Opinion filed March 6, 1968.

*Theodore C. Geisert,* of Kingman, argued the cause, and *Max M. Hinkle,* County Attorney, was with him on the brief for the appellants and cross appellees.

*Elvin D. Perkins,* of Emporia, argued the cause, and *John H. Lehman, D. V. Romine* and *William A. Guilfoyle,* all of Abilene, and *Everett E. Steerman* and *Keith A. Greiner,* both of Emporia, were with him on the brief for the appellees and cross appellant.

*Harry T. Coffman* and *Stephen Jones,* both of Lyndon, were on the brief for the appellees, *amici curiae.*

The opinion of the court was delivered by

SCHROEDER, J.: This is an action to enjoin a Watershed District and the individual members of its board of directors from putting into operation the proposed method of financing the General Plan of improvement on the ground that it is alleged to be unlawful. If the method of financing was held to be lawful the petition sought mandamus to force the holding of an election on such method of financing only.

The trial court sustained the Watershed District's motion for summary judgment as to the method of financing, and ordered the Watershed District to pay attorneys' fees to the attorneys for the plaintiffs. Whereupon, appeal was duly perfected by the parties to this action from each of the orders adverse to them.

The questions presented stem from whether the method of financing proposed by the Watershed District is lawful under the statutes of Kansas, and whether it was proper for the trial court to allow attorneys' fees to the plaintiffs' attorneys on the facts in this case.

The facts upon which the appeal is based are established by the pleadings, answers to requests for admissions, and answers to interrogatories. The material facts are uncontroverted.

The Turkey Creek Watershed Joint District No. 32 of Dickinson and Marion Counties, Kansas (defendant-appellee and cross appellant) is a municipal corporation organized under and governed by K. S. A. 24-1201, *et seq.* For the sake of brevity, it will hereinafter be referred to as the District. The residence of the District is in Dickinson County, Kansas. The individual plaintiffs (appellants-cross appellees) are all landowners in the defendant District. The state of Kansas on the relationship of the county attorney of Dickinson County, Kansas, also joined as a plaintiff in the action. The individual defendants (appellees), together with the plaintiff William Kingsbury, were the members of the board of directors of the defendant District when the action was filed.

On the 6th day of May, 1965, the board of directors of the District pursuant to K. S. A. 24-1213 passed a resolution adopting a General Plan dated January, 1965, which was prepared by qualified engineers for the installation of flood prevention works in the Watershed District.

The resolution adopting the general plan recited that the District "will execute an Agreement with the Soil Conservation Service, United States Department of Agriculture, which Agreement will provide for cooperation of the Federal Government in the installation of works of improvement for flood prevention and other purposes."

On the same date (May 6, 1965) the board of directors of the District passed another resolution adopting as official *the method of financing* costs of the works contemplated in the General Plan. This second resolution was published pursuant to K. S. A. 24-1215 and recited:

"1. The funds necessary to finance the installation, maintenance and operation of the proposed works of improvement, estimated to cost ninety-seven thousand nine hundred dollars ($97,900.00) for a ten year installation period, shall be obtained *by an annual levy upon all taxable tangible property within the District without issuance of bonds.*" (Emphasis added.)

In the adoption of this resolution on the method of financing the District relied upon K. S. A. 24-1219. The resolution also directed that:

". . . the Secretary of the District is hereby directed to publish this resolution pursuant to the provisions of Section 24-1215, Kansas Watershed District Act, and said resolution shall be in full force and effect thirty (30) days after said publication unless petitions signed by landowners of the District in a number in amounts of twenty percent (20%) of the landowners as determined by the verified enumeration filed with the petition for organization are filed with the Secretary of the Board at his office at Rural Route No. 2, Abilene, Kansas."

On the 24th day of May, 1965, the board of directors of the District passed a resolution authorizing its president to execute the Watershed Work Plan Agreement with the Soil Conservation Service, and the agreement was thereafter executed.

Before going into more detail as to the facts, it would facilitate an understanding of the issues to give the general background of state and federal legislative enactments which brought about this litigation.

The issues herein stem from an amendment to the Watershed District Act (now appearing as K. S. A. 24-1201, *et seq.*) made by the legislature in 1961. (L. 1961, ch. 193.) Prior to this time the original *Kansas Watershed District Act* contemplated project financing separate and distinct from the general fund. (See, G. S. 1953 Supp. 24-1216 and 24-1219.) That is, the entire cost of *works of improvement* undertaken by watershed districts was to be financed under the provisions of the act by a general tax levy against all of the taxable tangible property within the District and/or by special assessment against lands within the District to be specially benefited, pursuant to G. S. 1953 Supp. 24-1216, and amendments thereto prior to 1961.

It is apparent the 1961 amendment to the Kansas Watershed District Act was prompted by an enactment of the Federal Congress, Public Law 566, 83rd Congress, 68 Stat. 666, approved August 4, 1954, known as the Watershed Protection and Flood Prevention Act. (16 U. S. C. A., §§ 1001-1008.) This act authorized the Secretary of Agriculture to cooperate with state and local agencies

in the planning and carrying out of works of improvement for soil conservation and for other purposes. As applied to the facts in this case, the act authorized the Secretary of Agriculture, upon application, to assist local watershed districts authorized by law to carry out, maintain and operate the works of improvement. The Secretary of Agriculture was authorized to conduct investigations and surveys as may be necessary to prepare plans for works of improvement; to make such studies as may be necessary for determining the physical and economic soundness of plans for works of improvement; to cooperate and enter into agreement with and to furnish *financial* and other assistance to local organizations; and to obtain the cooperation and assistance of other federal agencies in carrying out the purposes of the act.

Section 4 of Public Law 566 provides:

"The Secretary shall require as a condition to providing Federal assistance for the installation of works of improvement that local organizations shall—

"(1) acquire without cost to the Federal Government such land, easements, or rights-of-way as will be needed in connection with works of improvement installed with Federal assistance;

"(2) assume such proportionate share of the cost of installing any works of improvement involving Federal assistance as may be determined by the Secretary to be equitable in consideration of anticipated benefits from such improvements: *Provided,* That no part of the construction cost for providing any capacity in structures for purposes other than flood prevention and features related thereto shall be borne by the Federal Government under the provisions of this Act;

"(3) make arrangements, satisfactory to the Secretary for defraying costs of operating and maintaining such works of improvement, in accordance with regulations presented by the Secretary of Agriculture;

"(4) acquire, or provide assurance that landowners have acquired, such water rights, pursuant to State law, as may be needed in the installation and operation of the work of improvement; and

"(5) obtain agreements to carry out recommended soil conservation measures and proper farm plans from owners of not less than 50 per centum of the lands situated in the drainage area above each retention reservoir to be installed with Federal assistance."

Section 5 of Public Law 566 provides in part:

"At such time as the Secretary and the interested local organization have agreed on a plan for works of improvement, and the Secretary has determined that the benefits exceed the costs, and the local organization has met the requirements for participation in carrying out the works of improvement as set forth in section 4, the Secretary is authorized to assist such local organizations in developing specifications, in preparing contracts for construction, and to participate in the installation of such works of improvement in accordance with the plan:  .  .  ."

In cooperation with the federal government the *General Plan* adopted by the District herein provides for installation, maintenance and operation of works of improvement within the Watershed District for flood prevention. The General Plan recites that "Federal funds will be furnished on a grant-in-aid basis under authority of Public Law 566 to cover the construction cost of works of improvement included in this general plan." It further recites:

"Upon adoption of this general plan, together with adoption of the official method of financing by the watershed district, as provided for in Sections 24-1213-4, Kansas Watershed District Act, the Watershed District, in cooperation with the Federal Government, will join with the Dickinson County Soil Conservation District and the Marion County Soil Conservation District in carrying out a program for watershed protection and flood prevention within a watershed generally coinciding with the boundaries of the watershed district.

"In carrying out the joint program, the watershed district will be responsible for the works of improvement covered by this general plan. The watershed district will execute an agreement with the Federal Government *which will provide that the Federal Government shall furnish engineering services, and shall grant Federal funds, subject to their availability, to the watershed district to cover the construction cost of the works of improvement contained in this plan.*" (Emphasis added.)

The General Plan describes the District as lying on the south side of the Kansas River in east central Kansas comprising an area of 163 square miles or 104,517 acres. About 18,000 acres are in Marion County, and about 86,516 are in Dickinson County. This area is about 25 miles long and averages about 9 miles in width.

Under the General Plan the works of improvement to be installed consist of a system of 15 floodwater retarding structures and 28.35 miles of channel improvement. The estimated cost of structural measures is $1,552,000, of which the District is to bear $97,900 and the federal government $1,454,100. The portion of the costs to be borne by the federal government includes construction and installation services. The portion of the costs to be borne by the District includes administration of contracts, procurement of easements, road and bridge, pipeline, other utility, general administration and programing, legal expenses and contingencies.

The General Plan gives an explanation of the installation costs. It recites, among other things:

"Land, easements, and rights-of-way costs including legal counsel, recording fees, and relocation of roads and other improvements were estimated by the board of directors. Cost estimates were based on information taken from the land rights work maps. Land rights work maps were furnished to the district

for each floodwater retarding site and channel improvement. These maps show area and type of effect on the property on which easements will be needed.

"Contract administration costs of the watershed district will include cost of mailing bid invitations, salary, if any, and expenses of the contracting officer in administering construction contracts. Contract administration costs were estimated by the board of directors."

The method of accomplishing the plan is set forth in the General Plan as follows:

"The works of improvement in this plan are proposed to be installed within a ten year period *following authorization of Federal assistance for installation.*

"After Federal assistance is authorized, the Soil Conservation Service will furnish engineering services to prepare construction plans and specifications for the works of improvement for flood prevention.

"The watershed district will obtain all land rights, easements, and rights-of-way needed for installation of the works of improvement. The watershed district will make arrangements with the county commissioners for abandonment, relocation, or modification of any county roads requiring such action. The district will likewise arrange for any relocation or modification to pipelines, communication lines or other public utilities which are necessary in connection with installing the improvements.

"The watershed district will contract for construction of the structural measures based on competitive bidding. Separate contracts will be awarded for general construction and for vegetative establishment. The district will appoint a Contracting Officer and will bear the cost of contract administration. Administrative assistance can be obtained, if needed, from the Soil Conservation Service to help in preparing Invitations to Bid and in awarding contracts.

"*Funds to reimburse the district for the construction cost of works of improvement for flood prevention will be obtained from the Federal government through Project Agreements for Construction executed with the Soil Conservation Service. A project agreement will be executed for each group of structural works to be included in a construction contract.*

"*The Soil Conservation Service will furnish engineering services for construction engineering and inspection, preparation and computation of partial payment estimates, final inspection and acceptance of the work.*

"Construction will be started when the district has complied with state laws relating to approval of construction plans, easements, and rights-of-way have been obtained *and Federal assistance is available.*

"*The furnishing of technical assistance, installation services, and grants-in-aid for construction by the Soil Conservation Service is contingent upon appropriation of funds for these purposes.*" (Emphasis added.)

The General Plan also gives the location and extent of areas benefited and sets forth the provisions for operation and mainte-nance. The estimated average annual operation and maintenance costs of the structural measures are $3,000, and it recites that such funds are to be obtained from an annual levy within the District. The General Plan requires the District to execute an agreement pro-

viding for operation and maintenance of the structural measures before federal construction funds are made available.

The *Watershed Work Plan Agreement* entered into between the District, the Dickinson County Soil Conservation District, the Marion County Soil Conservation District (the sponsoring local organizations), and the Soil Conservation Service, United States Department of Agriculture (the Service) recites that application was made to the Secretary of Agriculture by the sponsoring local organizations for assistance in preparing a plan for works of improvement for the District herein under the authority of the Watershed Protection and Flood Prevention Act.

The agreement, after making further recitals, sets forth that the sponsoring local organizations and the Secretary of Agriculture, through the Service, agree on the Watershed Work Plan, and further agree that the works of improvement as set forth in said plan can be installed in about ten years. The agreement recites:

"It is mutually agreed that in installing and operating and maintaining the works of improvement substantially in accordance with the terms, conditions, and stipulations provided for in the watershed work plan:

"1. The Sponsoring Local Organizations will acquire without cost to the Federal Government such land, easements, or rights-of-way as will be needed in connection with the works of improvement (Estimated cost $206,000).

"2. The Sponsoring Local Organizations will acquire or provide assurance that landowners or water users have acquired such water rights pursuant to State law as may be needed in the installation and operation of the works of improvement.

"3. The percentages of construction costs of structural measures to be paid by the Sponsoring Local Organizations and by the Service are as follows:

[The Service to pay 100% of the estimated construction cost of 15 floodwater retarding structures ($1,022,800), and 100% of the estimated construction cost of 28.35 miles channel improvement ($95,200).]

"4. The percentages of the cost for installation services to be borne by the Sponsoring Local Organizations and the Service are as follows:

[The Service to pay 100% of the estimated installation service cost of 15 floodwater retarding structures ($316,000) and 28.35 miles channel improvement ($20,100).]

"5. The Sponsoring Local Organizations will bear the costs of administering contracts (Estimated cost $5,100).

"6. The Sponsoring Local Organizations will obtain agreements from owners of not less than 50 percent of the land above each floodwater retarding structure that they will carry out conservation farm or ranch plans on their land.

.    .    .    .    .    .    .    .    .    .    .    .    .    .

"10. *The costs shown in this agreement represent preliminary estimates. In finally determining the costs to be borne by the parties hereto, the actual costs incurred in the installation of works of improvement will be used.*

"11. *This agreement does not constitute a financial document to serve as a basis for the obligation of Federal funds, and financial and other assistance to be furnished by the Service in carrying out the watershed work plan is contingent on the appropriation of funds for this purpose.*

"*Where there is a Federal contribution to the construction cost of works of improvement, a separate agreement in connection with each construction contract will be entered into between the Service and the Sponsoring Local Organizations prior to the issuance of the invitation to bid. Such agreement will set forth in detail the financial and working arrangements and other conditions that are applicable to the specific works of improvement.*

"12. The watershed work plan may be amended or revised, and this agreement may be modified or terminated, only by mutual agreement of the parties hereto." (Emphasis added.)

The petition filed pursuant to K. S. A. 60-907 by the plaintiffs herein was set forth in three counts. The first sought a permanent injunction and charged that the method of financing adopted by the board of directors of the District is illegal. The crux of the plaintiffs' first cause of action is contained in paragraph 6 as follows:

"6. Section 24-1214 of the Kansas Statutes Annotated provides for the only permissible methods of financing to be used for paying for all works contemplated in the General Plan. Contrary to such statutory provision, however, the individual defendants, as the Board of Directors of the defendant District, by the resolution of financing adopted, attempt to finance the works contemplated in the General Plan by use of the general fund of the District authorized to be created by Section 24-1219 of the Kansas Statutes Annotated by an annual levy of not to exceed two mills on the assessed valuation of the taxable tangible property within the District. Said general fund cannot be used for payment of the cost of the works of the General Plan and the method of financing adopted by the Board of Directors of the District is therefore illegal and the resolution adopting the same is null and void."

The plaintiffs further allege the General Plan purports to call for the expenditure of $97,900 by the District, whereas the District signed a contract in which it was estimated that the cost to the sponsoring local organizations, of which the District is one, will amount to $211,100. The petition in the first count further alleges the proposed method of financing will violate the provisions of the Cash-Basis Law (K. S. A. 10-1113) and will further violate the provisions of the Budget Law (K. S. A. 79-2935).

The plaintiffs further allege in their petition that their property would be subject to assessment and taxation, and that their land is all located in such a way that said land has not received any floodwater or runoff that the General Plan of the District is designed to prevent.

The plaintiffs in their second count sought mandamus and alleged

that after the adoption of the resolutions the District published the resolution of financing, and within thirty days after said publication petitions signed by landowners of the District in a number in excess of twenty percent of the landowners were filed with the secretary of the board of directors of the District. (See, K. S. A. 24-1215.) By reason thereof it is alleged that it became the duty of the board to submit the question of the adoption of the resolution of financing to the qualified voters of the District, and that the board of directors without lawful excuse refused to submit said resolution to the qualified voters of the District. Whereupon, the second count alleges:

"2. If the Court should determine that the law does not require an injunction to be issued against the defendants, then judgment in mandamus should be entered directing the defendants to submit the question of adoption of the resolution of financing to the qualified voters of the District."

The plaintiffs further allege they have been damaged by the refusal of the defendant District to call the election, which necessitated the bringing of this proceeding to enforce compliance with the law, and they request judgment against the defendant District for reasonable attorneys' fees for the prosecution of this action.

The third count in substance alleges an improper election with respect to the selection of officers and directors. This count appears to have been abandoned at some time prior to the final submission of the case to the trial court. The appellants have conceded on argument of this matter to the court that the District is lawfully constituted.

After issues were joined by the pleadings and the parties had filed their admissions and answers to interrogatories, the parties, respectively, filed motions with the court for summary judgment.

After a considerable hassle between the parties concerning the necessity of an election as to the proposed method of financing, the trial court upon submission of the matter overruled the motion of both parties for summary judgment on the first count and sustained the plaintiffs' motion for summary judgment on the second count, thereby requiring the directors of the District to conduct an election upon the proposed method of financing in accordance with the provisions of K. S. A. 24-1215. The foregoing order of the trial court was prompted by the defendants' confession of judgment as follows:

"COME Now the defendants herein and state and show to the court that defendants, in light of information gained by defendants since the institution of this action, concur with that part of the motion of the plaintiffs for summary

judgment which relates to the court issuing an order in Mandamus directing the officers and directors of the watershed district to submit the question of adoption of the resolution of financing to the qualified voters of the above described watershed district.

"Defendants do not hereby concur with or confess any part of plaintiffs' motion except as herein set out and specifically deny that judgment should be rendered for plaintiffs' attorney fees.

"WHEREFORE, defendants concur and confess that the court should enter an order in Mandamus directing the conduction of an election to submit the question of adoption of the resolution of financing to the qualified voters of the district."

Accordingly, an election was held on the 16th day of March, 1966, wherein the voters of the District overwhelmingly approved the method of financing adopted by the District. The vote was 267 in favor and 131 against the proposition. The negative vote represented approximately twenty percent of the qualified voters of the district.

Thereupon the defendants again moved the court for summary judgment in accordance with the provisions of K. S. A. 60-256 (b) on the first and second counts, and alleged that as to the second count the issues were now moot and the defendants were entitled to judgment as a matter of law on the question of attorneys' fees as sought and requested by the plaintiffs.

The court after hearing argument sustained the defendants' motion for summary judgment on the first count, thereby upholding the method of financing adopted by the District as lawful; and it sustained the plaintiffs' motion as to the recovery of attorneys' fees. The order was entered on the 29th day of August, 1966, and the trial court after hearing evidence allowed an attorneys' fee on the 12th day of September, 1966, in the sum of $1,350 to be taxed against the District, and not against the individual members of its board of directors.

Appeal has been duly perfected by the plaintiffs from the order of the district court sustaining the defendants' motion for summary judgment on the first count, and a cross appeal has been duly perfected by the District from the order of the trial court allowing attorneys' fees to the plaintiffs.

The appellants rely upon K. S. A. 24-1214 which reads in part:

"When the general plan is approved by the chief engineer the board shall then by resolution propose that the *cost to the district of all works contemplated in the plan be paid either by a general levy against all of the taxable tangible property located within the district or that such cost be paid by special assessment against lands within the district to be specially benefited by any of the*

*proposed projects or that such cost be paid by both such general levy and special assessment,* stating the portion proposed to be paid by each method.

"*The board shall also set forth in said resolution any proposal to issue improvement bonds of the district to provide for the payment of . . . proposed projects by installments instead of levying the entire tax or special assessment at one time.* The board shall thereupon fix a time and place either within or conveniently near the district for a public hearing upon the general plan and the resolution proposing a method of financing costs of the works contemplated in the plan. A notice of such hearing shall be given by one publication at least twenty (20) days prior to the date fixed for said hearing, setting forth the time and place of hearing upon said plan and resolution, that a copy of said plan and resolution is available for public inspection in the office of the secretary of the district and that any electors or landowners desiring to be heard in the matter must file, in duplicate, with the secretary of the board at his office. . . ." (Emphasis added.)

The appellees, on the other hand, rely upon K. S. A. 24-1219, which provides:

"The district board may issue no-fund warrants to pay for initial organizational, engineering, legal and administrative expenses of the district: *Provided,* That the amount so issued shall not exceed the product of two (2) mills times the assessed valuation of the taxable tangible property within the district, which warrants shall be issued, bear interest and be retired in accordance with the provisions of section 79-2940 of the General Statutes of 1949 and acts amendatory thereof, except that the approval of the state board of tax appeals shall not be required. Whenever warrants have been issued under this section, the board shall make a tax levy at the first tax levying period, after such warrants are issued, sufficient to pay such warrants and interest.

"*The board shall have authority to levy annually a tax of not to exceed two (2) mills to create a general fund for the payment of engineering, legal, clerical, land and interests in land, installation maintenance, operation and other administrative expenses and said tax may be against all of the taxable, tangible property of the district.*

"The district board shall have authority to levy a tax, after improvement bonds have been issued in accordance with sections 24-1214, 24-1215 and 24-1220 of the General Statutes Supplement of 1959, as amended, sufficient to pay such bonds and interest." (Emphasis added.)

The foregoing sections of the Kansas Watershed District Act represent a substantial change made by the legislature in 1961. The provisions in K. S. A. 24-1214 pertaining to the method of financing the cost of all works contemplated in the General Plan were shifted from K. S. A. 24-1216. (See, G. S. 1959 Supp. 24-1216.) Language in G. S. 1959 Supp. 24-1216, prior to the 1961 amendment, which made reference to financing "the specific project," was deleted in the 1961 amendment. The 1961 amendment added the second and third paragraphs to K. S. A. 24-1219. The first sentence in G. S. 1959 Supp. 24-1219, reading, "The district board shall have authority to

levy annually a tax of not to exceed one (1) mill upon the taxable tangible property within the district to create a general fund for the payment of organization, engineering, legal, clerical and other administrative expenses," was deleted, and the second paragraph of K. S. A. 24-1219 was submitted in its stead. The remainder of the first paragraph authorizing the issuance of no-fund warrants was amended to increase the authorized limitation from a one mill levy to two mills to pay for initial organizational, engineering, legal and administrative expenses of the District.

It must be conceded that a watershed district can levy taxes only as authorized by statute. K. S. A. 24-1209 in part reads:

"*Ninth.* To levy taxes and assessments, issue bonds and incur indebtedness within the limitations prescribed by this act."

Municipal corporations have only such powers as are expressly conferred by statute without resort to implication. (*Coronado Development Co. v. City of McPherson,* 189 Kan. 174, 368 P. 2d 51; and *Carp v. Board of County Commissioners,* 190 Kan. 177, 373 P. 2d 153.) Morever, the operation of the tax statutes will not be enlarged so as to include matters not specifically embraced. (*Williams v. Board of County Commissioners,* 192 Kan. 548, 389 P. 2d 795; and *Equitable Life Assurance Society v. Hobbs,* 154 Kan. 1, 114 P. 2d 871.)

When a statute is susceptible of more than one construction, it must be given that construction which, when considered in its entirety, gives expression to its intent and purpose, even though such construction is not within the strict literal interpretation of the statute. (*Shumaker v. Kansas State Labor Dept.,* 154 Kan. 418, 118 P. 2d 550.)

Fundamental rules of statutory construction are well stated in *State v. Sumner,* 169 Kan. 516, 219 P. 2d 438, where the first three syllabi of the court read as follows:

"In order to ascertain the legislative intent courts are not permitted to consider only a certain isolated part or parts, of an act but are required to consider and construe together all parts thereof *in pari materia.*

"It is the duty of courts to reconcile various provisions of an act in order to make them consistent, harmonious and sensible if that can be done without doing violence to plain provisions therein contained.

"When the interpretation of some one section of an act according to the exact and literal import of its words would contravene the manifest purpose of the legislature, the entire act should be construed according to its spirit and reason, disregarding so far as may be necessary the strict letter of the law."

It is the appellants' contention that K. S. A. 24-1214 provides the only statutory authority for the payment of works of improvement contemplated by the General Plan; that the Kansas Watershed District Act makes no provision for installment financing of proposed projects of watershed districts without the issuance of bonds as prescribed by the act.

The appellants place much emphasis on the language in 24-1214, *supra,* providing that the board shall by resolution propose that the cost to the District of all works contemplated in the plan be paid *"either by a general levy"* (Emphasis added) against all taxable tangible property located within the District *or* that such cost be paid by special assessment against lands within the District, or by both. They further rely on language in the next paragraph of 24-1214, *supra,* where provision is made for the issuance of improvement bonds of the District to provide for the payment of all or any part of the cost to the District of proposed projects by installments "instead of levying the entire tax or special assessment *at one time."* (Emphasis added.)

The appellants argue K. S. A. 24-1219 is the only statutory section making reference to any form of annual levy, and it refers to the creation of a general fund. The appellants argue that to consider 24-1219, *supra,* which authorizes the creation of a general fund, as permitting an annual levy to finance the General Plan is to do violence to 24-1214, *supra,* which states that one of the methods of financing is that the cost of such work shall be paid by *"a general levy,"* (Emphasis added) not a series of general levies; and that such action clearly contemplates if a general levy is not made all at one time, then improvement bonds shall be issued.

The appellants further rely upon language in K. S. A. 24-1215 which makes reference to "a general tax levy." Upon the foregoing, the appellants argue in their brief as follows:

"When all parts of the Watershed District Act are considered together it is found that the Act provides for creation of two separate funds—the general or maintenance fund created pursuant to K. S. A. 24-1219 and the improvement fund created pursuant to K. S. A. 24-1214. In turn the improvement fund can be the result of a general tax levy, special assessment or a combination of a general levy and special assessment. Whichever type of assessment is used the district can issue improvement bonds to provide for the payment of all or a part by installments instead of levying the entire general levy or special assessment at one time."

Unfortunately, the legislature by the 1961 amendment to the Kansas Watershed District Act, while deleting reference to project financing, retained language formerly used in connection with project financing by incorporating it in 24-1214, *supra.* We think, however, the intention of the legislature on the point here presented can be ascertained under the Watershed District Act as it is presently constituted.

A careful reading of the entire Watershed District Act discloses that the existence and function of watershed districts within the state of Kansas was legislatively determined to be of benefit to all of the areas within the respective watershed districts. K. S. A. 24-1201a provides in part:

". . . that there is hereby declared the public necessity for the creation of such districts in watersheds including lands that are subject to erosion, floodwater or sediment damages or that would be benefited by the construction of works of improvement for the conservation, development, utilization and disposal of water; and that *it is further declared that the formation of such districts will inure to the general benefit of all of the taxable, tangible property included therein."* (Emphasis added.)

The foregoing legislative declaration answers the appellants' contention that their lands are not benefited.

A close study of K. S. A. 24-1219 reveals that this is a *specific section conferring the power to tax* upon watershed districts. The power of taxation therein conferred consists of three distinct parts:

(1) The power of the District board to issue no-fund warrants and to levy a tax to pay such warrants and interest;

(2) The power to levy annually a tax of not to exceed two mills against all taxable tangible property in the District; and

(3) The power and authority to levy a tax, after bonds have been issued, in accordance with K. S. A. 24-1214, 24-1215 and 24-1220, sufficient to pay the improvement bonds and interest.

The appellants seek to distinguish or explain 24-1219, *supra,* by construing it to restrict the authority given the board to levy an annual tax of not to exceed two mills for administrative purposes only. The appellants contend the expression "installation maintenance" in the second paragraph of 24-1219, *supra,* has no comma between the two words, and that the expression "other administrative expenses" qualifies or modifies the other listed types of expenses. They arrive at this conclusion by the following semantics:

"In order to make *any sense out of the statute at all the word 'expenses' has* to be read with each of the preceding words and in order to do this then the

adjective 'administrative' must likewise modify or qualify all of them, thus limiting them to administration purposes."

We cannot accept the appellants' logic in construing the provisions of the second paragraph in 24-1219, *supra*. In construing statutes, qualifying words, phrases and clauses are ordinarily confined to the last antecedent, or to the words and phrases immediately preceding. The last antecedent, within the meaning of this rule, has been regarded as the last word which can be made an antecedent without impairing the meaning of the sentence. (50 Am. Jur., Statutes, § 269.)

While the foregoing rule of statutory construction is not inflexible, it clearly has application to the construction of 24-1219, *supra*, which does provide *the purposes* for which the general fund is to be created; that is, "for the payment of engineering, legal, clerical, land and interests in land, installation maintenance, operation and other administrative expenses."

Applying the ordinary meaning to all of the language used in this section, the legislature clearly intended that the fund created by the general tax levy could be used for the purchase of land and interest in lands, as well as engineering, legal, clerical and other costs. Under the foregoing rule of construction, "operation" is the last word which the phrase "other administrative expenses" qualifies. The presence or absence of punctuation is not conclusive as to the meaning intended by the legislature. Punctuation is important only as it aids in the interpretation of the statute. If it is ambiguous or obviously misleading it may be disregarded. (*Atchison, T. & S. F. Rly. Co. v. State Highway Commission*, 123 Kan. 576, 579, 255 Pac. 966.)

The ordinary meaning of the language in the second paragraph in 24-1219, *supra*, suggests that it was tailor-made by the legislature to fit works of improvement undertaken by a watershed district in cooperation with the federal government under the Federal Watershed Protection and Flood Prevention Act as exemplified by the facts in the instant case. Here all expenses to be borne by the District are embraced within the purposes enumerated in the second paragraph in 24-1219, *supra*, for which a general tax of not to exceed two mills can be levied annually.

The appellants contend the trial court's ruling in effect holds that the statutes involved allow an expenditure of general fund moneys for the works of improvement, which renders the statutes

unconstitutional as authorizing an unlawful diversion in violation of Article 11, Section 5, of the Kansas Constitution. This section provides:

"No tax shall be levied except in pursuance of a law, which shall distinctly state the object of the same; to which object only such tax shall be applied."

On the facts in the instant case the lion's share of the costs for the works of improvement undertaken by the District is borne by the federal government, and the costs to the District, as heretofore indicated, are specifically enumerated in the second paragraph of 24-1219, *supra*, for which the tax is authorized. A tax levied under this provision on the facts here presented is squarely embraced within the constitutional provision.

The appellants single out of the General Plan part of the District's estimated cost of $7,380 for road and bridge, $600 for pipeline and $2,775 for other utility, contending such expenditures obviously are not within the permitted uses of the general fund levy. The facts on this point have heretofore been related under the method of accomplishing the General Plan which disclose that the District is obligated to obtain all land rights, easements and rights-of-way needed for the installation of the works of improvement. In this category are included arrangements to be made by the District with the county commissioners for abandonment, relocation or modification of any county roads requiring such action, and other arrangements to be made for any relocation or modification to pipelines, communication lines or other public utilities. These are all embraced within the District's obligation to obtain land rights, easements and rights-of-way needed for the installation of the works of improvement. (See definition of "land" found in K. S. A. 24-1202 [c].)

Can 24-1219, *supra*, be reconciled with 24-1214, *supra*?

If the appellants' construction of 24-1214, *supra*, is correct, a general levy may be made only once, regardless of whether or not improvement bonds are issued. It should be noted the statute does not say "a general levy may be made unless improvement bonds are issued, in which case more than one levy may be made." The same situation applies to the special assessment mentioned in the statute since it is stated in the singular, not in the plural. Clearly, where improvement bonds of the District are issued to provide for the payment of proposed projects by installments, the term "a general levy" as used in 24-1214, *supra*, contemplates more than one levy.

A careful study of the entire Watershed District Act discloses the position of the appellants to be untenable. In our opinion, the two sections of the act in question are reconcilable. This conclusion is fortified by K. S. A. 77-201, *Third,* which provides in substance that words importing the singular number only in a statute may be extended to several persons or things, thereby denoting the plural, as well, and vice versa. Further harmony is made possible by the fact that K. S. A. 24-1219 deals specifically with the authorization to levy taxes, and controls over K. S. A. 24-1214, which deals only generally with the method of financing the works of improvement contemplated in the General Plan. *(Long v. Culp,* 14 Kan. 412; *Cutrel v. Best,* 169 Kan. 16, 217 P. 2d 270; *State, ex rel., v. Throckmorton,* 169 Kan. 481, 219 P. 2d 413; and *Moody v. Edmondson,* 176 Kan. 116, 269 P. 2d 462.)

In further exploring the intent and plan of the legislature, an examination discloses that K. S. A. 24-1214 sets out machinery for adopting a resolution of financing which is to be undertaken prior to the detailed and accurate engineering contemplated by K. S. A. 24-1216. It is obvious the legislature intended the District would expend considerable money in making detailed studies before any accurate information would be available as to the total cost to the District. In the instant case we are concerned only with the *method of financing* adopted by the resolution of the District and voted upon by the individual landowners of the District.

Apparently, the appellants have confused the adoption of a method of financing the General Plan under the Watershed District Act with the actual levying of a tax. Here the District at the time of trial had not as yet levied any tax pursuant to the method of financing. If such a tax is levied it must comply with the provisions of the constitution and statutes. Certainly, the fact that a general tax levy can be made to defray the initial costs of a watershed district would not render the statute unconstitutional. Neither can it be assumed the District herein will fail to adopt a valid budget and make a proper levy pursuant thereto.

Does the method of financing adopted by the resolution of the District's board violate the Cash-Basis Law or the Budget Law?

It must be conceded the District herein falls within the definition of a "municipality" and is governed by the Cash-Basis Law and the Budget Law of Kansas. (K. S. A. 10-1101.)

The Cash-Basis Law and the Budget Law are violated only if indebtedness is paid or created by the governing body of a munici-

pality in excess of the amount of funds actually on hand in the treasury of such municipality at the time for such purpose, or in excess of the amount budgeted for the current year for such purpose. (K. S. A. 10-1113; K. S. A. 79-2935.)

At the time this matter was heard in the district court there was no showing that the District or its board of directors had incurred any indebtedness or obligation in excess of funds on hand, or in excess of budgeted funds, nor was there any showing that the District had become obligated or indebted in any sum for any purpose.

Despite the appellants' contention that the Watershed Work Plan Agreement actually created a binding obligation, a careful reading of the Work Plan Agreement discloses that it is only a part of a projected program or General Plan as defined in K. S. A. 24-1202 (m), and that by the very terms of the contract between the Soil Conservation Service of the United States Department of Agriculture and the District a separate agreement in connection with each construction project specifying the financial and working arrangements and other conditions applicable to the specific works of improvement was a prerequisite to any binding obligation as to that project. It is fair to say the Work Plan Agreement is nothing more than a fulfillment of a requirement of the federal act, which is tantamount to a letter of intent to proceed with the fulfillment of the Watershed District Plan.

The facts, heretofore stated, disclose the Soil Conservation Service of the United States Department of Agriculture would not be liable for failure to build any one or more of the projects embraced within the General Plan, because the agreement does not constitute a financial document to serve as a basis for the obligation of federal funds. Financial assistance is made contingent upon the appropriation of funds for this purpose. (See ¶ 11 of the Watershed Work Plan Agreement.) Neither can it be said there was any indebtedness created against the District for any of the contemplated costs which the District estimated.

Here the board of directors of the District have complied with all the provisions of K. S. A. 24-1213 and 24-1214, and therefore have adopted a General Plan of construction that has been approved by the chief engineer of the division of water resources of the Kansas State Board of Agriculture. By resolution they have adopted a method of financing which has been voted upon and approved by

the electorate of the District. No annual levy other than that provided in 24-1219, *supra,* has been requested, and therefore, the limitation of two mills set forth in that section governs the amount that can be levied. In other words, the board of directors of the District adopted as a method of financing a plan which contemplates that a general levy of not to exceed two mills, as provided in the second paragraph of 24-1219, *supra,* will be sufficient to provide all of the necessary funds that will be needed by the District.

The resolution of financing sets forth estimated costs obtained from the General Plan as adopted by the District. These estimated costs to the District totaled $97,900. The figure of $211,100 indicated in the Work Plan Agreement includes the sum of $206,000, which is the value placed upon the land, easements and rights-of-way estimated by the parties preparing the Work Plan. The latter estimate did not take into consideration, among other things, that easements to land at the site of retarding structures are more often donated to the District by the individual landowners than not. These donations are prompted by tax benefits and other rights accruing to landowners who donate land or easements or rights-of-way to a watershed district "in connection with the erection and maintenance of one or more reservoirs for the storage of water and flood detention storage." (K. S. A. 1967 Supp. 82a-409.)

We hold the method of financing adopted by the District was valid and within the powers of the District under the Watershed District Act, and the trial court did not err in sustaining the District's motion for summary judgment on the first count in the plaintiffs' petition.

We now turn to the cross appeal in which the District contends the trial court erred in allowing attorneys' fees to the plaintiffs under the mandamus phase of the case embraced in the second count of the plaintiffs' petition.

A cross appeal was taken by the District and not by the individual members of its board of directors, the trial court having entered judgment against the District only.

The facts as to this point disclose that proper petitions requesting an election on the method of financing were filed with the secretary of the board of directors of the District within the time prescribed by law. The District, however, through its board of directors, refused to call an election contending that the petitions contained

insufficient valid signatures for five reasons, they being: (1) That some asked to have their names removed from the petitions; (2) that some married women signed by using the word "Mrs." and their husbands' first and surnames; (3) that one signed by an agent and one had another person sign for him; (4) that it was contended some were not landowners of the District and thus were ineligible; and (5) that some were induced to sign by misrepresentation.

A large portion of the record discloses the hassle between the parties on this issue.

After the suit was filed on the 27th day of July, 1965, the District persisted in its contention. Thereafter, the answer was filed, answers were given to interrogatories and finally, in answer to request for admissions filed November 12, 1965, the District admitted facts disclosing the previous contention of the District to be false. Not until December 2, 1965, after the plaintiffs had moved for summary judgment, did the District actually admit that the petitions requesting an election on the method of financing were sufficient, and confess judgment.

The large discrepancy between the parties in the number of valid signatures to the petitions was occasioned by the District's refusal to recognize that the town of Navarre was in the District, despite the fact that the District's Work Plan dated March, 1965, stated it was in the District, and the map contained in both the General Plan and the Work Plan showed it to be in the District. A number of affidavits were filed by the parties as to whether the District acted in good faith on this matter.

The trial court, after hearing the matter as to the allowance of attorneys' fees, allowed $1,350 attorneys' fees to the plaintiffs' attorneys and taxed the costs and attorneys' fees to the District.

The District takes the position that its board of directors acted in good faith on the 13th day of July, 1965, when the board refused to find the petition sufficient and failed to call an election. Actually, the town of Navarre was within the District at all times material herein, and the signatures to the petition were sufficient to require an election.

The trial court, after allowing the fee, stated to counsel for the District:

". . . the 2d of December, 1965—you confessed that this was an error made by the board, whether this confession would have ever been forth-

coming without the suit being filed, I have very serious doubts, because ignorance has a way of propagating itself and continuing, and it's the easy way. Then, I note that though you admit that there were sufficient signatures to require an election, in other words, you took in the rest of the area, which if I recall right was Navarre. . . ."

Where twenty percent of the landowners of a watershed district request an election after publication of the resolution of financing, within the time prescribed, K. S. A. 24-1215 in part provides:

"In the event such petitions are filed, it shall be the duty of the board to submit the question of adoption of said resolution to the qualified voters of the district. . . ."

K. S. A. 60-802 provides the procedure for relief in the form of mandamus, which shall be obtained under the same procedure as relief in other civil actions. Subsection ( c ) provides:

"( c ) Damages. If judgment be given for the plaintiff, he may also recover such damages as he may have sustained by reason of the failure of the defendant to perform the specified duty, together with costs."

It is a general rule that attorneys' fees and expenses of litigation, other than court costs, are not recoverable as an item of compensatory damage, in the same or subsequent action, and are not chargeable as costs against the defeated party, in the absence of a clear and specific statute authorizing such recovery. ( *Ablah v. Eyman,* 188 Kan. 665, 682, 365 P. 2d 181, 90 A. L. R. 2d 766. )

The provisions of 60-802 ( c ), *supra,* are substantially the same as G. S. 1949, 60-1710 in the old code of civil procedure, and its predecessor, L. 1909, ch. 182, § 723. Judge Gard, (Gard, Kansas Code of Civil Procedure Annotated, § 60-802c, p. 611) says this subsection is in keeping with the Kansas decisions and the law generally that on judgment for the plaintiff in a mandamus action, he may in the same proceeding recover such damages as he has actually sustained through the wrongdoing of the defendant. The damages recoverable are the injuries sustained as the natural and probable consequences of the wrongful refusal to comply, and the expense reasonably and necessarily incurred in compelling compliance, including reasonable attorneys' fees. ( *McClure v. Scates,* 64 Kan. 282, 67 Pac. 856; and *Larabee v. Railway Co.,* 85 Kan. 214, 116 Pac. 901.)

Under the provisions of the old code damages were allowed in a summary way and as an incident to a proceeding in mandamus. Instead of resorting to a separate action for damages, the successful

plaintiff could secure them as a part of his remedy in mandamus. (*McClure v. Scates,* supra.)

On the surface decisions appear to make a distinction where the duty, sought to be compelled by the mandamus proceeding, is purely ministerial (*State, ex. rel., v. Bentley,* 98 Kan. 442, 157 Pac. 1197), as distinguished from a duty where a public official or board is authorized to exercise the power of discretion or judgment. Thus, in *Railroad Co. v. Nation,* 83 Kan. 237, 109 Pac. 772, and in *Hicks v. Davis,* 100 Kan. 4, 163 Pac. 799, it was held that an executive officer was not individually liable for the performance of duties involving discretion and judgment, in the absence of malice, oppression in office or willful misconduct, and attorneys' fees were denied. Where the board of park commissioners acted in good faith attorneys' fees were denied, the court stating that a public body "cannot use public power to oppress." (*Linden v. Board of Park Commissioners of Wichita,* 178 Kan. 333, 337, 285 P. 2d 1070.)

In *Russell State Bank v. Steinle,* 159 Kan. 293, 153 P. 2d 906, the board of county commissioners intervened and sought to abolish the county court and attorneys' fees were denied. In the opinion the court said:

". . . While the board was mistaken in its views and the county attorney erred in his second conclusion we cannot say upon the basis of the facts before us in this proceeding that the action of the board was necessarily arbitrary or in bad faith. . . ." (p. 299.)

In *Day v. Cowley County Comm'rs,* 146 Kan. 492, 71 P. 2d 871, the sheriff brought an original proceeding in mandamus against the board of county commissioners to enforce duties imposed upon the commissioners relative to the operation of the county jail. In the opinion the court said:

"Plaintiff asks for the allowance of an attorney's fee to be taxed as costs. This is a proceeding in mandamus against a board of county commissioners, and involves the expenditure of public funds. The faithful performance of official duties requires not only that officials proceed with caution relative to such expenditures but that they remain within the limitations fixed by law. This was the essential purpose of the budget and cash-basis law. When in reasonable doubt public officials are not only entitled to have such doubt resolved for their own assurance but the public interest also will be advanced thereby. Where public officials act reasonably and in good faith, although defeated in a mandamus proceeding, they are properly relieved from personal liability for costs and damages. (*Cates v. Knapp,* 104 Kan. 184, 186, 187, 178 Pac. 447; *State, ex rel., v. Bone,* 125 Kan. 818, 838, 266 Pac. 85; *Kittredge v. Boyd,* 136 Kan. 691, 700, 18 P. 2d 563.) The rule, of course, is otherwise where the official acts arbitrarily, unfairly or oppressively. He then becomes a wrong-

doer and subject to the liabilities of a wrongdoer. (*Hicks v. Davis*, 100 Kan. 4, 163 Pac. 799; *King v. Wooster*, 111 Kan. 625, 627, 208 Pac. 654.) In the instant case the writ sought by plaintiff is allowed only in part. The record before us discloses no bad faith, but rather a reasonable doubt on the part of members of the board of county commissioners relative to the questions involved, and the request for the allowance of an attorney's fee to be taxed as costs must be denied. . . ." (p. 499.)

Careful analysis of the foregoing cases reveals a thread of consistency relative to the allowance of attorneys' fees, as a part of the plaintiffs' damages, where compliance with a duty enjoined upon a public official, commission or board is enforced by mandamus. The characterization of the wrongdoing necessary to embrace the allowance of attorneys' fees as damages in these cases gradually progresses in magnitude through the whole gauntlet of duties imposed, from the purely ministerial to those requiring the exercise of discretion and judgment. The underlying test applied seems to be whether the refusal of the public official, commission or board to perform the duty imposed by law is reasonable under all of the confronting facts and circumstances.

This test is sufficient to embrace the expanded concept of mandamus. (See, *Mobil Oil Corporation v. McHenry*, 200 Kan. 211, 436 P. 2d 982.)

The plaintiffs (cross appellees) contend it was unnecessary for the District board to exercise judgment in the instant case, that the question to be determined by the District was strictly one of fact, and if proper petitions are filed the election must be called. They argue the District has long since admitted that proper petitions were filed and the defendants thus had a positive duty to call the election.

The District relies on K. S. A. 24-1215 for the proposition that the question as to whether sufficient petitions are filed is for the determination of the board; that it is a discretionary function to be performed by the board and calls for the exercise of judgment, and it is not a purely ministerial function. The District relies upon *State, ex rel., v. Electric Power Co.*, 116 Kan. 70, 226 Pac. 254. There by statute a city was given the right to grant a franchise upon prescribed conditions where an electric power transmission company built its lines into or through the city, provided that such franchise should not be granted until notice of the proposition had been given, and if, within a prescribed time, ten percent of the legal electors should petition the city authorities to submit the

proposition to a vote of the electors of the city, it should be submitted and the city authorities governed by the result of such vote. The action was there filed by the state in *quo warranto* on relation of the attorney general against the Kansas Electric Power Company, questioning the authority of the company to exercise the privileges and rights granted in an extension ordinance passed by the commissioners of the city of Council Grove. In the opinion the court said:

"Apart from the insufficiency of the evidence there is the finding and decision of the city commission that ten per cent of the legal electors had not signed the petition. To that commission the legislature has committed the authority to ascertain and determine the sufficiency of the petitions and whether those signing them constituted ten per cent of the legal electors of the city. This power and discretion is to be exercised by this tribunal unhampered by judicial interference unless it is shown that the act is without jurisdiction or there was fraud or some misconduct which is the substantial equivalent of fraud. Nothing approaching fraud in its action was shown or attempted to be shown. In the absence of evidence to the contrary it must be presumed that the commission acted honestly and in accordance with law, and its determination on the question submitted to it is binding alike on all parties and conclusive upon the courts. . . ." (p. 73.)

The foregoing must be construed in connection with all the facts in the case. (See, *Cowles v. School District,* 88 Kan. 603, 129 Pac. 176.) It is important herein only to show that the duties of the District's board of directors relative to the holding of an election were more than ministerial duties.

The District contends there is no showing of bad faith on its part. It contends this is evidenced by its confession of judgment when it was ascertained that there were sufficient signatures to petitions requiring an election. A confession of judgment standing alone does not, however, relieve the defendant in a mandamus action from the payment of damages, including attorneys' fees. (*Trust Co. v. City of Atchison,* 93 Kan. 302, 144 Pac. 222; and *Nolte v. Telephone Co.,* 86 Kan. 770, 121 Pac. 1111.)

Here the trial court had the entire case before it, including testimony as to attorneys' fees and affidavits. One of the directors of the District's board was a plaintiff, and present at board meetings. His affidavit tended to support unreasonable action on the part of the board in its refusal to hold an election, while affidavits of two other members of the board and the contracting officer for the Dis-

trict tended to show the board's action in refusing to hold an election reasonable.

The trial court after making the statement heretofore quoted, and allowing $1,350 to the plaintiffs as damages to compensate for plaintiffs' attorneys, indicated the District board did not proceed with an election until a considerable time after they admitted the town of Navarre to be in the Watershed District.

The judgment of the trial court allowing the foregoing damages imports a general finding in favor of the plaintiffs. It must, therefore, be said the trial court found the refusal of the District to hold an election, for which the court compelled performance, unreasonable. Upon all of the facts and circumstances confronting the trial court herein, we cannot say that it erred in such finding. On the record here presented the amount allowed by the trial court for attorneys' fees was not excessive.

Other points raised by the parties have been carefully considered, but they are found to have insufficient merit to warrant further discussion.

The judgment of the lower court is affirmed.