No. 27,676.

THE ATCHISON, TOPEKA & SANTA FE RAILWAY COMPANY, *Plaintiff*,
v. THE STATE HIGHWAY COMMISSION, and JOHN W. GARDNER, C.
A. WILKIN and R. W. DOLE, as the State Highway Commission,
*Defendants*.

SYLLABUS BY THE COURT.

HIGHWAYS—*Expense Incurred at Railroad Crossing—Statute Construed.* The
statute relating to improved highways (Laws 1917, ch. 264, § 18) contained,
among other things, the following:

"The state highway commission, upon the request of any county or town-
ship board, may require suitable safety devices or warning signals at dan-
gerous or obscure railroad crossings to indicate the approach of trains, which
shall be installed and maintained by the railroad company."

This was amended (Laws 1919, ch. 245, § 3) by changing the period at
the end of the sentence to a semicolon and adding the following:

"And the state highway commission may require the removal of spoil
banks and other obstructions to view, and the grading of approaches to the
tracks; the cost of which shall be borne by the railroad company and county
or township jointly or severally in the proportions determined by the state
highway commission."

*Held:* the last clause relates to the cost of the removal of spoil banks and
other obstructions to view, and the grading of approaches to the tracks, and
does not relate to the cost of installation and maintenance of suitable safety
devices or warning signals at dangerous or obscure railroad crossings.

Original proceedings in mandamus. Opinion filed May 7, 1927. Motion to
quash alternative writ sustained.

*William R. Smith, Owen J. Wood, Alfred A. Scott* and *Alfred G. Armstrong,*
all of Topeka, for the plaintiff.

*William A. Smith,* attorney-general, and *Roland Boynton,* assistant attorney-
general, for the defendants.

The opinion of the court was delivered by

HARVEY, J.: This is an original proceeding in mandamus to re-
quire defendants to hear evidence as to the costs, and to make an
order dividing the expense between the railway company and the
county or township, of installation and maintenance of suitable
safety devices or warning signals at a dangerous or obscure improved
highway railway crossing. It is presented on defendants' motion to

Railroads, 33 Cyc. p. 673 n. 27. Statutes, 36 Cyc. pp. 1117 n. 17, 1118 n. 18,
1126 n. 45.

quash the alternative writ. The decision turned on the interpretation of the portion of R. S. 68-509, which reads as follows:

"The state highway commission, upon the request of any county or township board, may require suitable safety devices or warning signals at dangerous or obscure railroad crossings to indicate the approach of trains, which shall be installed and maintained by the railroad company; and the state highway commission may require the removal of spoil banks and other obstructions to view, and the grading of approaches to the tracks; the cost of which shall be borne by the railroad company and county or township jointly or severally in the proportions determined by the state highway commission."

Plaintiff contends that the last clause, relating to the division of costs, applies not only to "the removal of spoil banks and other obstructions to view, and the grading of approaches to the tracks," but that it also applies to the installation and maintenance of "suitable safety devices or warning signals at dangerous or obscure railroad crossings." Defendants contend that the clause relating to the division of costs applies to "the removal of spoil banks and other obstructions to view, and the grading of approaches to the tracks" only.

The statute in question is a part of our general improved highway law of 1917 (Laws 1917, ch. 264, § 18) as amended in 1919 (Laws 1919, ch. 245, § 5) and embodied in our Revised Statutes (R. S. 68-509). As originally enacted the portion of the statute in question read:

"The state highway commission, upon the request of any county or township board, may require suitable safety devices or warning signals at dangerous or obscure railroad crossings to indicate the approach of trains, which shall be installed and maintained by the railroad company." (Laws 1917, ch. 264, § 18.)

Under this statute it was the duty of the railroad company to install and to maintain the safety devices or warning signals at the places and under the circumstances provided in the statute. This necessarily included the duty and obligation of the railroad company to pay the cost of such installation and maintenance. The language used clearly so imports. The statute contained no other provision for the payment of such cost.

The legislature of 1919 deemed it prudent to authorize additional measures for the safety of the traveling public—whether on the high-

way or the railroad—at improved highway railroad crossing, and added to the then existing statute the following:

"And the state highway commission may require the removal of spoil banks and other obstructions to view, and the grading of approaches to the tracks; the cost of which shall be borne by the railroad company and county or township jointly or severally in the proportions determined by the state highway commission."

Here were new things, not mentioned in the previous statute, to be done—"the removal of spoil banks and other obstructions to view, and the grading of approaches to the tracks"—and provision must be made for the costs thereof. Now, the spoil banks may have been made by the railway company while grading its roadbed, or by the county, or township, in grading the highway, and these facts would have a bearing on which one of them should pay for the removal; other obstructions to view may be one or more of a great variety of things, the character and location of which, and how they came to be there, would have a bearing on who should pay for the cost of removals; the nature, location and extent of the grading of approaches to the track would have a bearing on who should pay for that. Hence, the legislature provided that who should pay the cost of these things, and the proportions of such cost, shall be determined by the highway commission.

There was no need for this amendment to provide for the cost of installing and maintaining safety devices or warning signals. That had been provided for by the previous statute, and the provision was complete in itself. The amendment of 1919 related to something different from safety devices and warning signals. It related to the removal of spoil banks and other obstructions to view, and the grading of approaches to the tracks, and for the payment of the cost of such work, and the provision concerning these things is complete in itself.

Plaintiff relies largely on the punctuation in the statute, and particularly upon the second semicolon, and argues that the sentence as it now stands relates, generally speaking, to two things: (1) Installation and maintenance of safety devices and warning signals, and (2) removal of spoil banks, etc., and, that the last clause relating to costs, being separated from the other two clauses by a semicolon, indicates the legislative purpose and intent that the cost of both things should be determined in the same manner. This does not necessarily follow.

The problem before us is, of course, to find the purpose and intent of the legislature in enacting the statute in question. In other words: What is the manifest purpose of the statute? (*Young v. Regents of State University,* 87 Kan. 239, 124 Pac. 150; *Gleason v. Sedgwick County,* 92 Kan. 632, 635, 141 Pac. 584; *Railway Co. v. Cowley County,* 103 Kan. 681, 684, 176 Pac. 99.) Punctuation is important only as it aids in the interpretation of the statute. If it is ambiguous or obviously misleading it may be disregarded. (*State v. Deuel,* 63 Kan. 811, 66 Pac. 1037.) Or, perhaps more accurately, the purpose of the statute is to be determined from its obvious purpose, its history, etc., without specific reference to the punctuation used. In 25 R. C. L. 965, the rule is thus stated:

"It seems to be well settled that punctuation is a fallible standard of the meaning of a statute, and the last resort as an aid in its interpretation, though it may be resorted to as such aid when the meaning of the statute is doubtful. In the interpretation of statutes the true meaning of the lawmaker must be ascertained from the whole purview, and when that is manifest from a judicial inspection the court will not permit punctuation to control, but will disregard the punctuation of a statute or repunctuate, if need be, to give effect to what otherwise appears to be its purpose and true meaning."

To the same effect is 36 Cyc. 1126.

Here the punctuation is defective. In fact the punctuation is what gives rise to the controversy here. As passed by the legislature in 1919 (as shown by the files in the office of the secretary of state) the legislature had a period at the place of the semicolon in question, and the first word following it beginning with a capital letter. In publishing the statute some one changed the period to a semicolon and the capital to a small letter. This improved the structure of the sentence, but it would have been improved more if a comma had been used. Plaintiff contends that since the statute was reënacted in the Revised Statutes of 1923, its history is no longer important. This contention is erroneous. For the purpose of determining the legislative purpose the history of the enactment of a statute and of its amendments may always be inquired into. (*State v. Kelly,* 71 Kan. 811, 81 Pac. 450; *Arkansas City v. Turner, State Auditor,* 116 Kan. 407, 409, 226 Pac. 1009. See, also, *Atchison, T. & S. F. Rly. Co. v. Board of Education,* ante, p. 378, 255 Pac. 60.)

An amendment to a statute by the addition of a new provision does not indicate a legislative purpose to change the meaning of existing provisions. (*City of Topeka v. Wasson,* 101 Kan. 824, 168

Pac. 902.) The adding, in 1919, of the new matter relating to spoil banks, etc., does not indicate a legislative purpose to change the duty of the railway company to install and maintain safety devices or warning signals at dangerous or obscure crossings, nor to relieve the railway company from liability for the payment of the costs of such installation and maintenance.

Plaintiff cites *United States v. Smith,* 17 F. (2d) 534, in which it was said:

". . . Punctuation by semicolon is indicative of a complete thought in one clause separate from the other clauses of the statute." (p. 535.)

This was said in construing a federal statute (U. S. Comp. Stat. 1918, § 4289-1/4jj; act of Feb. 5, 1917, ch. 29, § 19) relating to the deportation of aliens. This definition of the use of a semicolon was properly applied in the case cited, and may well be applied to the first semicolon used in the portion of the statute in question. Obviously it cannot be well applied to the second semicolon used in the statute in question, for to do so would leave the clause, after such semicolon, nothing upon which to operate—it is not "a complete thought in one clause separate from the other clauses of the statute." This case strengthens the view that a semicolon was an improper punctuation mark to use at that place in the statute. Hence, the fact that it was used must be disregarded, and we must look to the evident legislative intent, that is, to what the legislature endeavored to accomplish by the amendment added to the statute in 1919, which we have previously discussed.

Defendants' motion to quash the alternative writ will be sustained.