IN THE SUPREME COURT OF THE STATE OF KANSAS

No. 115,763

TIMMY GLAZE,
*Appellant*,

v.

J.K. WILLIAMS, LLC, and COMMERCE & INDUSTRY INSURANCE COMPANY,
*Appellees*.

SYLLABUS BY THE COURT

Under K.S.A. 2011 Supp. 44-523(f)(1), a workers compensation claimant must move for an extension within three years of filing an application for hearing if the claim is to survive a proper motion to dismiss.

Review of the judgment of the Court of Appeals in 53 Kan. App. 2d 712, 390 P.3d 116 (2017). Appeal from Workers Compensation Board. Opinion filed April 19, 2019. Judgment of the Court of Appeals affirming the Workers Compensation Board is affirmed. Judgment of the Workers Compensation Board is affirmed.

*Daniel L. Smith*, of Ankerholz and Smith, of Overland Park, argued the cause and was on the brief for appellant.

*Ryan D. Weltz,* of Wallace, Saunders, Austin, Brown & Enochs, Chartered, of Overland Park, argued the cause, and *Christopher J. McCurdy*, of the same firm, was with him on the briefs for appellees.

*Jan L. Fisher*, of McCullough, Wareheim & LaBunker, of Topeka, was on the brief for amicus curiae Kansas AFL-CIO.

PER CURIAM: This appeal concerns the interpretation of K.S.A. 2011 Supp. 44-523(f)(1). The administrative law judge (ALJ), the Kansas Board of Workers Compensation (the Board), and a panel of our Court of Appeals concluded that this statute requires that a claimant file a motion for extension within three years of filing an application for hearing for the claim to survive a proper motion to dismiss. We agree with this interpretation and affirm.

## FACTUAL AND PROCEDURAL BACKGROUND

On December 5, 2012, Timmy Glaze filed an application for hearing with the Kansas Division of Workers Compensation, asserting that he fell and injured himself while working for J.K. Williams, LLC.

On January 4, 2016, J.K. Williams filed an application for dismissal, stating that the ALJ should dismiss Glaze's claim pursuant to K.S.A. 2011 Supp. 44-523(f) because Glaze had "failed to move the claim towards regular hearing or settlement within three years" of filing his application for hearing. On January 29, 2016, Glaze filed a "request for extension of time to schedule out of state deposition and to schedule regular hearing." Glaze asserted that the case was not ready to proceed to final hearing, because "[d]ue to factors beyond the control of either claimant or his Kansas counsel," he had not been able to depose his psychologist.

After a hearing, the ALJ granted J.K. Williams' application to dismiss on February 12, 2016. In its order, the ALJ explained that K.S.A. 2011 Supp. 44-523(f)(1) required the dismissal because Glaze had not moved for an extension within three years of filing his application for hearing.

2

Glaze appealed the dismissal to the Board. The four-member board affirmed the dismissal, with one member dissenting. *Glaze v. JK Williams, LLC and Commerce & Industry Ins. Co.*, No. 1,063,419, 2016 WL 2619518, at *3 (Kan. Work. Comp. App. Bd. April 11, 2016).

Glaze appealed the Board's decision to the Court of Appeals. The panel affirmed the lower decisions. *Glaze v. J.K. Williams, LLC*, 53 Kan. App. 2d 712, 390 P.3d 116 (2017).

Glaze petitioned for this court's review of the following issues: (1) whether the panel erred in interpreting K.S.A. 2011 Supp. 44-523(f)(1) and dismissing his claim; (2) whether the panel erred when it held that K.S.A. 2011 Supp. 44-523(f)(1) requires dismissal of a claim when a motion to extend is not filed within three years of filing an application for hearing; and (3) whether the panel's interpretation of K.S.A. 2011 Supp. 44-523(f)(1) deprived him of due process under section 18 of the Bill of Rights of the Kansas Constitution. We granted review of his first two issues.

ANALYSIS

There is no distinguishable difference between Glaze's points in the two issues he presents. In both, he offers arguments about how the panel erred in interpreting K.S.A. 2011 Supp. 44-523(f)(1), and many of those arguments overlap. For this reason, we address the issues as one.

3

*Standard of Review*

We conduct an unlimited review of issues of statutory interpretation, owing "no significant deference to the ALJ's or the Board's interpretation or construction." *Bryant v. Midwest Staff Solutions, Inc.*, 292 Kan. 585, 587, 257 P.3d 255 (2001).

*Discussion*

When statutory language is clear and unambiguous, we simply interpret the words used by the Legislature. *Ambrosier v. Brownback*, 304 Kan. 907, 911, 375 P.3d 1007 (2016). "A statute is ambiguous when two or more interpretations can fairly be made." *Petty v. City of El Dorado*, 270 Kan. 847, 851, 19 P.3d 167 (2001). "If the language is less than clear or is ambiguous, we move to statutory construction and use the canons of construction and legislative history and other background considerations to divine the legislature's intent." *Ambrosier*, 304 Kan. at 911.

The parties dispute the meaning of K.S.A. 2011 Supp. 44-523(f)(1).

K.S.A. 2011 Supp. 44-523(f)(1) provides:

"In any claim that has not proceeded to a regular hearing, a settlement hearing, or an agreed award under the workers compensation act within three years from the date of filing an application for hearing pursuant to K.S.A. 44-534, and amendments thereto, the employer shall be permitted to file with the division an application for dismissal based on lack of prosecution. The matter shall be set for hearing with notice to the claimant's attorney, if the claimant is represented, or to the claimant's last known address. *The administrative law judge may grant an extension for good cause shown, which shall be conclusively presumed in the event that the claimant has not reached maximum medical improvement, provided such motion to extend is filed prior to the three year limitation provided for herein.* If the claimant cannot establish good cause, the claim shall be

4

dismissed with prejudice by the administrative law judge for lack of prosecution. Such dismissal shall be considered a final disposition at a full hearing on the claim for purposes of employer reimbursement from the fund pursuant to subsection (b) of K.S.A. 44-534a, and amendments thereto." (Emphasis added.)

The parties' disagreement and the panel's conclusion center on the third sentence: "The administrative law judge may grant an extension for good cause shown, which shall be conclusively presumed in the event that the claimant has not reached maximum medical improvement, provided such motion to extend is filed prior to the three year limitation provided for herein." K.S.A. 2011 Supp. 44-523(f)(1).

The Board has consistently interpreted this sentence to mean that, when a claim has not proceeded to a regular or settlement hearing or a final award within three years from the filing of an application for hearing, an ALJ may grant an extension only if the claimant moved for an extension within the three years. See *Hackler v. Peninsula Gaming Partners, LLC*, No. 1,060,758, 2016 WL 858312 (Kan. Work. Comp. App. Bd. February 25, 2016); *Hoffman v. Dental Central*, No. 1,058,645, 2015 WL 4071473 (Kan. Work. Comp. App. Bd. June 26, 2015); *Ramstad v. U.S.D*. 229, No. 1,059,881, 2015 WL 5462026 (Kan. Work. Comp. App. Bd. August 31, 2015). The ALJ and the Board interpreted it in the same way here. *Glaze*, 2016 WL 2619518, at *1.

The Court of Appeals agreed with this interpretation. *Glaze*, 53 Kan. App. 2d at 718-19. The panel explained that there is only one way to read the sentence at issue. It considered the final provision—"provided such motion to extend is filed prior to the three year limitation provided for herein"—to modify the first phrase of the sentence—"[t]he administrative law judge may grant an extension for good cause shown." *Glaze*, 53 Kan. App. 2d at 718-19. It came to its conclusion by the following reasoning:  "Glaze's interpretation of the statute would mean that the conclusive presumption of good cause would only apply if the claimant filed a motion to extend within the 3-year limit. We can

5

think of no logical reason why the legislature would limit the use of the presumption in this manner." *Glaze*, 53 Kan. App. 2d at 716.

While we agree with the panel's ultimate conclusion, we consider its reasoning faulty. The panel pointed to no authority suggesting that when a statute is susceptible to two different meanings the ambiguity may be resolved if logical reasoning fails to support one of the meanings. It is not the presence of logic that is the measure of ambiguity, but the absence of clarity.

That said, we agree that the sentence unambiguously prohibits an ALJ from granting an extension unless a motion for extension has been filed within three years of filing the application for hearing. Any other interpretation strains the common reading of the statute's ordinary language. This conclusion is confirmed when general rules of grammar and punctuation are applied.

The parties disagree about whether the third clause in the disputed sentence modifies the first or the second clause. It is clear to us that it completes the sentence begun by the first and, in that way, can be said to "modify" it. The second clause, on the other hand—"which shall be conclusively presumed in the event that the claimant has not reached maximum medical improvement"—merely explains one way in which the antecedent "good cause" can be established. It is not a necessary element of the basic sentence; it is not required to identify or define that antecedent; it provides only extra, exemplary information. This means that it qualifies as a nonrestrictive clause. Strunk & White, The Elements of Style 3-4 (4th ed. 2000) ("A nonrestrictive clause is one that does not serve to identify or define the antecedent noun."); Webster's New World College Dictionary 996 (5th ed. 2014) ("nonrestrictive . . . designat[es] a modifier, as a word, phrase, or subordinate clause, that adds information without limiting the reference of the word or phrase it modifies and thus is not essential to the meaning of a sentence").

6

Because the second clause is nonrestrictive, it must be set off from the rest of the sentence by commas. Strunk, 4; see also Bremner, Words on Words: A Dictionary for Writers and Others Who Care About Words 369-70 (1980). When we omit this extraneous clause and its commas, the sentence is still complete and still means the same thing. It reads: "The administrative law judge may grant an extension for good cause shown provided such motion to extend is filed prior to the three year limitation provided for herein." The Legislature stated plainly that the three-year period should function as a time bar to moving for an extension.

Other courts have turned to similar grammatical reasoning when facing interpretation questions. See, e.g., *In re Conduct of Gallagher*, 332 Or. 173, 184, 26 P.3d 131 (2001) (identifying a clause in a disciplinary rule as nonrestrictive "because it is set off by commas," and noting that "[b]ecause it is nonrestrictive, the phrase can be dropped without changing the meaning of the sentence"); *Gateway Park, L.L.C. v. Ferrous Realty Ltd.*, No. 91082, 2008 WL 5050023, at *6 (removing the nonrestrictive clause to determine the meaning of a sentence in a deed).

"Provided" means "[o]n the condition or understanding (that)." Black's Law Dictionary 1261 8th ed. 2004). In other words, an administrative law judge may grant "an extension for good cause shown" but only if the extension has been sought by a timely motion.

Our reading of the statute also is consistent with conventions of punctuation. See Chicago Manual of Style, §§ 6.29, 6.31 (17th ed. 2017) ("A descriptive phrase that is restrictive—that is, essential to the meaning [and often the identity] of the noun it belongs to—should not be set off by commas"; and, when a sentence ends with an adverbial phrase, "a comma is necessary only when the phrase is used in a nonrestrictive sense, providing information that is not essential to the meaning of the rest of the sentence.").

Under this convention, if the Legislature meant the third clause to modify the second clause, the second comma would be absent. It is not. In contrast, a comma does not separate the third clause from the first when we remove the second, nonrestrictive clause and the two commas that set if off: "The administrative law judge may grant an extension for good cause shown provided such motion to extend is filed prior to the three year limitation provided for herein."

The dissent's assertion that "we should look beyond rules of grammar and punctuation when considering ambiguity" is puzzling. Slip op. at 10. Rules of grammar and punctuation (and usage, syntax, etc.) give structure to our written language, without which we would have nothing from the Legislature but useless word salad. We have often said that the plain, written language of the Legislature is our best and only safe tool for divining its intent. See, e.g., *State v. Gensler*, 308 Kan. 674, 677, 423 P.3d 488 (2018). With these points as undeniable givens, it seems the wisest course is to keep this tool sharp, rather than letting it degrade under the advancing, reedy surf of declining standards.

The long-term, harmful effects of surrendering our best and only safe tool to that surf would not be limited to this case, of course. The sound reasons that this court has worked so diligently for the last decade and a half to introduce more discipline into our frequent tasks of statutory interpretation and construction would be undermined. We chose the disciplined path deliberately because it advances embedded values of judicial restraint and modesty and preserves respect for separation of powers and institutional competency. Ignoring what are universally recognized rules of grammar and punctuation threatens to leave too much room for judicial freewheeling on the hunt for whatever that day's court considers the most palatable result. See *State v. Spencer Gifts,* 304 Kan. 755, 765, 374 P.3d 680 (2016) ("'[Q]uestions of public policy are for legislative and not judicial determination, and where the legislature does so declare, and there is no constitutional impediment, the question of the wisdom, justice, or expediency of the legislation is for

8

that body and not for the courts.'") (quoting *State ex rel. v. Kansas Turnpike Authority*, 176 Kan. 683, 695, 273 P.2d 198 [1954]).

We also note that the dissent's example—"A baseball game may be cancelled for bad weather, which will not disappoint many fans, provided the fans are able to see a make-up game"—is only superficially similar to the sentence we focus on in this case. Slip op. at 14. When diagrams of the two sentences are compared, it is immediately apparent that their structures and the functions of their structures' components are entirely different. Putting aside what the dissent may be tempted to dismiss as pedantry, even a casual and/or uneducated listener can quickly discern that the third clause in the dissent's sentence tells us only when the fans mentioned only in the second clause are or are not likely to be disappointed, not when the game mentioned only in the first clause may be cancelled. Grammar and punctuation live to serve common sense, not the other way around.

Finally, before concluding, we respond in one further way to the dissent. At least some of us might swallow hard and overlook the dissent's hamfisted handling of the English language but for our inability to understand how it can lead to its outcome. Even if the third clause of the sentence under scrutiny somehow should "modify" the second clause, a claimant still needs to seek an extension within three years, unless the third clause is completely ignored. We are not willing to depart from our routine reluctance to add or subtract language from a statute. See, e.g., *Ullery v. Othick*, 304 Kan. 405, 409, 372 P.3d 1135 (2016); *Hoesli v. Triplett, Inc.*, 303 Kan. 358, 362, 361 P.3d 504 (2015).

The Court of Appeals' conclusion that the statute unambiguously requires a party to move for extension within three years of filing an application for hearing is correct. Accordingly, we agree with its decision, although we do so under a slightly different rationale.

The decisions of the Court of Appeals and the Kansas Board of Workers Compensation are affirmed.

LUCKERT, J., not participating.
WILLIAM R. MOTT, District Judge, assigned.[1]

* * *

ROSEN, J., dissenting:  While I find the majority's grammatical reasoning intriguing, I cannot join in its holding because we should look beyond rules of grammar and punctuation when considering ambiguity. Reading the sentence in question is much like looking at a picture that seems to depict a single figure but when focusing in a different way depicts a very different image. What is perceived and understood depends on what and how you look at it. I find this statute ambiguous and, for reasons I will explain, believe the Legislature intended the three-year time limit to apply to a conclusive presumption of good cause, not to the filing of a motion for extension.

The majority's interpretation stands on the presence of a single comma. I can find no previous case in which this court has held the rules of grammar and punctuation are so controlling when we consider ambiguity. I can, however, find cases in which this court

[1]**REPORTER'S NOTE:**  District Judge Mott was appointed to hear case No. 115,763 vice Justice Luckert under the authority vested in the Supreme Court by art. 3, § 6(f) of the Kansas Constitution.

has said they are not controlling. For example, in *Godsoe v. Harder*, 164 Kan. 86, 90, 187 P.2d 515 (1947), this court said

> "[w]e never decide cases altogether on grammatical construction and punctuation, where to do so would do violence to the clear intent of the legislature. The grammatical construction and punctuation, however, must be given significance. They cannot be ignored entirely. A fairly safe means of ascertaining the intention of the legislature is an examination of what it finally said in its enactments. There is no mystery about grammatical construction. Its rules are those designed to enable men to put their ideas on paper in such a form that readers, sometimes years later, may read what was written and know what the writer intended to say. When the interpretation of a statute is before us we consider whether the language used given a correct grammatical construction leads to a reasonable result and expresses what the legislature evidently intended to say. When it does so we follow it. In considering such a question we examine the entire section and in a proper case the entire chapter in connection with the general matter with which the legislature was dealing."

This sentiment is noted in decisions throughout this court's history. See *State v. Toliver*, 306 Kan. 146, 151, 392 P.3d 119 (2017) (turning to "the common rules of English grammar" only after concluding that a statute was ambiguous); *Link, Inc. v. City of Hays*, 266 Kan. 648, 653-54, 972 P.2d 753 (1999) (finding a statute ambiguous and turning to legislative history even though grammatical principles suggested one interpretation over any others); *Atchison, T. & S.F. Rly. Co. v. State Highway Commission*, 123 Kan. 576, 579, 255 P. 966 (1927) ("the purpose of the statute is to be determined from its obvious purpose, its history, etc., without specific reference to the punctuation used"); *State v. Appleton*, 73 Kan. 160, 162, 84 P. 753 (1906) (noting "[p]unctuation of a statute is not controlling"); *Smith v. Haney*, 73 Kan. 506, 508, 85 P. 550 (1906) ("'The rule that bad grammar will not defeat the operation of a statute is old and well settled.'"); *State ex rel. Secretary of SRS v. Jackson*, 249 Kan. 635, 642, 822

P.2d 1033 (1991) (noting "'courts not infrequently construe "may" as "shall" or "must" to the end that justice may not be the slave of grammar'").

Trusted secondary sources come to the same conclusion. Sutherland Statutes and Statutory Construction states:

"[t]he better rule is that punctuation is part of an act and courts may consider punctuation to interpret an act but not to create doubt or to distort or defeat legislative intent. Punctuation, then, may be a useful aid to interpret an ambiguous or unclear law if it offers some indication of legislative intent or statutory meaning." 2A Sutherland Statutory Construction § 47:15 (7th ed.).

Similarly, Corpus Juris Secundum explains:

"[a] determination of a statute's plain meaning presupposes that the legislature used accepted punctuation. Punctuation is part of a statute and should be considered in an attempt to give the statute the construction intended by the drafter. However, punctuation cannot control statutory interpretation or construction and cannot prevail against the manifest intent of the legislature. A purported plain-meaning analysis based only on punctuation is necessarily incomplete and runs the risk of distorting a statute's true meaning. The result of any construction based in part on punctuation must harmonize with the clearly expressed intent of the legislature." 82 C.J.S., Statutes § 430.

The majority assumes the Legislature follows esoteric rules of punctuation when drafting statutes. There is no support for such an assumption. In fact, the Legislature has little to say about how it punctuates sentences in translating its intention into statutory language. "Kansas legislative specification regarding comma usage is relatively thin . . . . Let not any essential meaning hinge on a comma . . . ." Rosenthal, *Kill the Comma? A Case for Punctuation Preservation*, 87 J.K.B.A. 25, 26 (Feb. 2018).

And a cursory review of Kansas statutes shows this assumption is untrue. The following statutory excerpts reveal that legislators have not followed the rule that the majority relies on to determine the outcome of this case—that no comma should precede a conditional clause when that clause modifies the one immediately before it:

"Whenever the revenues from the charges for the use of any lateral sewers shall be insufficient to pay the interest and principal upon the revenue bonds issued therefor, it shall be the duty of the governing body of the sewage district to increase the charges for the use of such laterals to an amount sufficient to meet such debt requirements, *provided that the right to do so is plainly stated in the form of contract signed by such sewer users.*" (Emphasis added.) K.S.A. 80-2018.

"(a) A society shall specify in its laws or rules:

(1) Eligibility standards for each and every class of membership, *provided that if benefits are provided on the lives of children*, the minimum age for adult membership shall be set at not less than age 15 and not greater than age 21." (Emphasis added.) K.S.A. 40-743.

"15. 'Uniform Standard' means a standard adopted by the Commission for a Product line, pursuant to Article VII of this Compact, and shall include all of the Product requirements in aggregate; *provided, that each Uniform Standard shall be construed, whether express or implied, to prohibit the use of any inconsistent, misleading or ambiguous provisions in a Product and the form of the Product made available to the public shall not be unfair, inequitable or against public policy as determined by the Commission.*" (Emphasis added.) K.S.A. 40-5301.

"The faculty of the university of Kansas school of medicine and members of the staff of the university of Kansas medical center hospital may, for teaching purposes only, maintain records of interviews, reports, statements, memoranda of teaching groups and committees, movies, video tape photographs, and other such teaching devices if, prior to their use, the permission of the patient involved has been obtained, or, if the patient be deceased, be a minor or is otherwise legally incapacitated, then the permission may be

13

obtained from the surviving spouse, natural parent or the legally appointed executor, administrator, guardian or conservator, *provided that the identity of the patient is protected from public disclosure by any means . . . .*" (Emphasis added.) K.S.A. 76-355.

"(d) An owner may withhold not more than 150% of the value of incomplete work, *provided that the incomplete work is due to the fault of a contractor.*" (Emphasis added.) K.S.A. 2017 Supp. 16-1804.

"(c) An owner may withhold not more than 150% of the value of incomplete work, *provided that the incomplete work is due to the fault of a contractor.*" (Emphasis added.) K.S.A. 2017 Supp. 16-1904.

"(g) Any nurse holding a home state multistate license on the effective date of this compact may retain and renew the multistate license issued by the nurse's then-current home state, *provided that*:

(1) A nurse who changes such nurse's primary state of residence after this compact's effective date must meet all applicable article III(c) requirements to obtain a multistate license from a new home state." (Emphasis added.) K.S.A. Ch. 42 § 1, art. III.

The problem with the majority's construction is illustrated by this example:

"A baseball game may be cancelled for bad weather, which will not disappoint many fans, provided the fans are able to see a make-up game."

The majority's reading of this sentence, using a rigid and questionable construction of punctuation rules, would tell us that a baseball game may be cancelled for bad weather only if fans are permitted to see a make-up game. But context and good sense tells us the third clause actually modifies the second clause—not many fans will be disappointed if they are able to see a make-up game.

14

As the Texas Supreme Court noted in *Castlemann v. Internet Money Limited*, 546 S.W.3d 684, 690 (Tex. 2018), while properly placed commas can determine to what a modifier applies, "they do not always dictate that determination . . . [P]unctuation does not require the Court to ignore reason. *See* [Scalia & Garner, Reading Law:  The Interpretation of Legal Texts, 164-65 (2012)] ('Perhaps more than any other indication of meaning, punctuation is often a scrivener's error, overcome by other textual indications of meaning.')."

I find all of this a compelling enough reason to look beyond the rules of punctuation when considering ambiguity. I think the clause in question can be read to modify the first clause or the second clause and, thus, is ambiguous. And because the sentence is ambiguous, I would turn to the legislative history to derive the legislative intent behind the statute.

The Legislature enacted K.S.A. 2011 Supp. 44-523(f)(1)'s predecessor—K.S.A. 44-523(f)—in 2006. The original language, included in House Bill 2753, was different than the final version passed by the Legislature. When first introduced, it read as follows:

> "No proceedings for compensation under this section shall be maintained and the claim shall be dismissed if the hearing under this section has not been concluded and all evidence submitted within five years from the date of the filing of the application for hearing pursuant to K.S.A. 44-534, and amendments thereto, unless a timely motion has been filed to extend for cause the five year period."

During a hearing in the House Committee on Commerce and Labor, the Kansas Self-Insurers Association and Claims Director for the Kansas Restaurant and Hospitality Association discussed why the statute was necessary. The minutes summarize her testimony in the following way:

15

"It becomes an extremely complicated process for claims management when carrying unknown liabilities forward. It restricts us from closing fund years and distributing available dividends to members as we issue dividends only when all claims in a fund year are closed and the fund year is subsequently closed. Many of the insured members are small independent businesses who could use the dividends to help offset other increasing costs in operating a business in Kansas. Currently our fund years are closed through 1997. H.B. 2753 would allow to close a fund year with certainty a claim would not resurface with unknown liability in years to come. It is believed 5 years is more than enough time for all parties to present their case for final determination through the Courts." *Minutes, Hearing on H.B. 2753 before the H. Commerce and Labor Committee*, 2006 Legislative Session (February 10, 2006) (testimony of Tina Williams).

An attorney appearing for the Kansas Coalition for Workplace Safety testified in opposition to the bill. The Minutes indicate he provided the following testimony:

"Under this bill, a hearing and all evidence must be submitted within five years of the date of the filing of the Application for Hearing unless a Motion For Cause has been filed. Kansas workers compensation laws already have three statutes of limitations in workers compensation. Kansas is the only state in the nation that has three. Does Kansas need to become the only state in the Union that has four statutes of limitations? In summary, this provision would, apparently, require all cases to go to a Regular Hearing Level in front of an Administrative Law Judge, or be dismissed. That result would create an enormous burden on an already overworked Administrative Law Judge Staff. As written, the amendment would dismiss cases with ongoing open medical, would not allow Settlement Hearings or Agreed Awards under the present system where any ongoing rights, i.e., future medical, review and modification, would be potentially available. This amendment would set traps for unwary workers and any legitimate reasons for this provision are greatly outweighed by the catastrophic effects it would have on many workers compensation cases . . . ." *Minutes, Hearing on H.B. 2753 before the H. Commerce and Labor Committee*, 2006 Legislative Session (February 10, 2006) (testimony of Jeff K. Cooper).

16

After this testimony, "Representative Ruff stated the Workers Compensation Council should work this out first." *Minutes, Hearing on H.B. 2753 before the H. Commerce and Labor Committee*, 2006 Legislative Session (February 10, 2006). Ten days later, the House Commerce and Labor Committee suggested the following amendment to the language:

> "Any claim that has not proceeded to final hearing, a settlement hearing, or an agreed award under the workers compensation act within five years from the date of filing an application for hearing pursuant to K.S.A. 44-534, and amendments thereto, shall be dismissed by the administrative law judge for lack of prosecution. The administrative law judge may grant an extension for good cause shown, which shall be conclusively presumed in the event that the claimant has not reached maximum medical improvement, provided such motion to extend is filed prior to the five year limitation provided for herein. This section shall not affect any future benefits which have been left open upon proper application by an award or settlement." House J. 2006, pp. 1243-44.

This language was approved by the House and the Senate and eventually signed into law. K.S.A. 2006 Supp. 44-523(f).

Thus, under the 2006 enactment, the administrative law judge (ALJ) was directed to automatically dismiss any claim that had not proceeded to a final hearing, a settlement hearing, or an agreed award within five years from the date of filing the application. To avoid this dismissal, a claimant had to file his or her motion to extend before that five years expired.

In 2011, the Legislature amended the statute to read as it does today (and at the time of Glaze's injury and application filing). The 2011 amendments resulted in some critical changes. In the new version, the referenced time period is reduced from five years to three years and a hearing is required upon an employer's application for dismissal.

17

Furthermore, the statute no longer directs or authorizes the ALJ to automatically dismiss the claim after a certain time.

These amendments were included in House Bill 2134 (H.B. 2134), a bill that proposed a large overhaul of the workers compensation system. In a hearing in the House Committee on Commerce and Economic Development, a lawyer who worked on a team responsible for negotiating H.B. 2134 testified on behalf of the Kansas Chamber of Commerce. He stated the bill was "a result of long and detailed, but most importantly, successful negotiations between business and labor" and that "[t]he overall goal [of H.B. 2134] was to provide fairness in the resolution of claims for both employers and employees, to raise the threshold to be entitled to benefits and to provide greater benefits to those who deserve them." *Minutes, Hearing on H.B. 2134 before the H. Comm. on Commerce and Economic Development*, 2011 Legislative Session (February 7, 2011) (attachment 4-2, written testimony of Larry Karns of Glen, Cornish, Hanson, and Karns).

There was very little testimony about the changes to K.S.A. 44-523(f), which became K.S.A. 44-523(f)(1). Karin Brownlee, the Kansas Secretary of Labor, provided a brief overview of H.B. 2134. She testified K.S.A. 44-523(f)(1) "[c]hanges the 5 year rule for keeping an application open for hearing to 3 years if [there] hasn't been any activity." *Minutes, Hearing on H.B. 2134 before the H. Comm. on Commerce and Economic Development*, 2011 Legislative Session (February 7, 2011) (attachment 2-2, written testimony of Karin Brownlee, Kansas Secretary of Labor). Fred Greenbaum, an attorney representing business interests, summed up the proposed legislation in a hearing in the Senate Commerce Committee. His written testimony describes K.S.A. 2011 Supp. 44-523(f)(1) as a "[m]odified mechanism for dismissing dormant claims." Below that description, Greenbaum's written testimony presents the following two bullet points: "Failure to proceed to any hearing or award within three years from date of Application for Hearing and no good cause shown," and, "Dismissal with prejudice." *Minutes,*

18

*Hearing on substitute for H.B. 2134 before the S. Commerce Committee*, 2011 Legislative Session (March 3, 2011) (attachment 1-21, written testimony of Fred Greenbaum of McAnay, Van Cleave & Phillips, P.A.). Gary Terrill, a lawyer who participated in drafting H.B. 2134, testified on behalf of the Kansas Association of Defense Counsel. In his written testimony, he stated the bill "provides for a procedure to dismiss aging claims in which there has been no activity for a period of years." *Minutes, Hearing on substitute for H.B. 2134 before the S. Commerce Committee*, 2011 Legislative Session (March 9, 2011) (attachment 3-2, written testimony of Gary Terrill of Wallace, Saunders, Austin, Brown & Enochs, Chtd.). There was no other discussion of K.S.A. 2011 Supp. 44-523(f)(1).

This history indicates the 2011 Legislature did not intend the three-year period act as a time bar to filing a motion for extension. First of all, the testimony suggests the Legislature intended only *inactive* claims be dismissed, not those that are being actively pursued. Second, the removal of the automatic dismissal provision and the addition of a hearing requirement suggests the Legislature intended for all claimants to have the opportunity to show good cause at a hearing, whether or not they filed a motion to extend before the three years expired. If this was not the Legislature's intention, it is unclear why the statute directs that *all* matters be set for hearing after a motion to dismiss is filed instead of directing that matters be set for hearing only after a motion to dismiss and a timely motion for extension. Third, Karns' statement that the 2011 amendments were meant to "provide fairness in the resolution of claims for both employers and employees, to raise the threshold to be entitled to benefits and to provide greater benefits to those who deserve them" suggests the drafters intended those who deserved benefits to receive those benefits, not just those who were diligent in following procedural guidelines. Nothing in the legislative history suggests the drafters were concerned with meritorious claims taking too long to resolve—it suggests they were concerned with inactive or dormant claims remaining open.

19

In summary, I find the statute is ambiguous and that the Legislature's decision to remove the automatic dismissal provision and include a hearing mandate, coupled with testimony expressing that the drafters wanted to ensure compensable claims were compensated, suggests the Legislature did not envision a statute that prohibits the ALJ from granting an extension, even in the light of good cause, if the claimant filed a motion outside of the three-year time period. Because it appears the Legislature did not intend this, the third clause can only modify the second. Under this construction, the ALJ is authorized to conclusively presume good cause only when the claimant has not reached maximum medical improvement and filed a motion for extension within three years from filing an application for hearing. I would reverse the Court of Appeals, the Board, and the ALJ and remand the case to the ALJ for a hearing on good cause.

JOHNSON and BILES, JJ., join the foregoing dissenting opinion.